Wood, C. J.
The important question which first demands the consideration of the Court, is one exclusively of fact, and that is, whether the $4,000 advanced to Larimore by Seymour G. Renick, in May, 1841, was in behalf of the hank, and for its benefit, or a loan of his own funds, on his own private or individual account. If the money was advanced for the bank, Seymour G. Renick had no right to mould the transaction into one of a private nature of his own; and as the claim was a mere chose in action, not negotiable, the bank, by.its Receivers, may pursue it into the hands of a bona fide assignee without notice. If collected by the assignee, the money should be refunded ; if not, its collection should be enjoined, and Larimore decreed to pay directly to the complainants, for the benefit of the institution, that the avails of the judgment may pro tanto discharge the liabilities of the institution.
The allegations of the bill, and the answer of Seymour G. Renick, are directly at issue on the main point, and have, consequently, thrown upon us the necessity of a careful examination of the depositions on file. From them, much curious history has been elicited as to the manner in which this slumbering corporation was revived, but which is irrelevant to the present inquiry. It is certain, however, that Seymour G. Renick took possession of the bank, in February, 1841, as President, owner of a majority of the stock, and, therefore, the controlling director. He was looked upon as the financier of the institution, and was, in fact, the bank itself, as is unequivocally established by the proofs in the case.
His first transaction with Larimore, of which we have any evidence, was on the 17th of May, 1841. He then checked on *336 the bank, in favor of Larimore, for $2,500. This check was charged'to Renick, find .the money, in The bills of the bank, to Larimore, to exchange for currency, and- the currency to be delivered to the bank. Seven days afterwards, Larimore sent to thé bank $2,750, in bills of other banks. This amount was credited to Renick. The depositions of McCulloch and Doney .prove that, when this $2,750 yvas transmitted to the bank, it was accompanied-with a letter from Seymoilr-G. Renick, inclosing his check for $4,000. The letter \yas dated the 22d of May, and'the check, inclosed in it, the 17th of June, and not charged to him on the .books of the bank until that date, though paid;,- as the cashier testifies he believes, some time before. ' The cashier arid Doney both swear, they understood' this money was to be exchanged for the benefit of the, bank. This evidence is corroborated by the fact, that Larimore, after-. wards, paid to the bank $2,000 in Chillicothe paper, for which he had exchanged a like amount of, this .$4,000 of the paper of the Bank of Circleville.. It is true, in- the settlement between. Renick and the bank, in December,-1841, he gave his note for. the money advanced- to, and unpaid by Larimore. But the bank-was, at this time, insolvent,, and Renick had previously become so; and, counsel very properly infer, that he then deemed ,it. more(.convenient to his condition, that Larimore should stand as'his creditor than the bank:' the', former was able to1 pay — the latter could not. The,,depositions^of both Seymour G. Renick and Larimore have been taken, but they are; as directly in conflict as the bill and the answer ;- but laying Larimore’-s deposition aside, ■ as incompetent from interest, it does riot appear that any. note or memorandum was taken by. Renicli for the money advanced to Larimore. On- the contrary, it. is- sufficiently evident there was not.-, This fact is only to be accounted for on the ground, that the advance was not a loan, but thai the transaction was exclusively for the interest of the bank, and so considered at the time. No man lends a large sum of money, for months, preserving, no written evidence of the debt, or, at least, it is not the ordinary mode iri which a *337 banker transacts his business. On the other hand, where large sums are to. be .transmitted, or paper exchanged, for the benefit of another exclusively, nothing is more common; apd we are therefore 'led irresistibly to the belief, from all the above facts, that this advance was not a loan, as set up in the answer. We arrive at this conclusion', even regarding the answer- as strictly responsive'to the bill, because, to the substantial facts, there is far more testimony than the rule in equity requires, in such-cases, to establish it., '
Felix W. Renick appears, hówéver, to be sorely troubled, for the reason, that this- bank had not been legally- organized. He defends on the ground, that a majority of the commissioners named in th'e charter did not attend to open the books .for subscription to the capital stock. The evidence is, that four out of the seven in esse, were present. He claims again, in substance, that the charter was forfeited. In the absénce of express provision, the forfeiture of the charter of a corporation can only be established by judicial action, and cannot be collaterally inquired ipto. He defends, also, japón the ground, that no commissioner was appointed by the Governor, as th'e charter required, to examine into the condition of the bank, count the funds in its vaults and report thereon to the Governor, 'who was to issue his proclamation; giving notice that the law was complied with, and without this, contends the bank had no.legal existence. The evidence -is, the amount of capitál- stó'ck required by law, was subscribed ;■ the per centum', called for thereon', by the 'charter, before commencing business, was in the vault of the bank, in silver and gold, and application made for the appointment of á -commissioner, which appears to have been disregarded. The' bank then had done all ón its part, either truly or falsely,- it had performed every obligation demanded and necessary to its complete organization. That all this Was not done in.- good faith, we aré not judicially informed. Under such circumstances, we are by no' means prepared - to say, eer-? tainly not, as against those who admit its existence by the receipt of its funds and in transacting business with it as a cor *338 poration, that they can deny it has acquired rights, as such, and defeat its honest claims, for any act of omission of duty by the executive, if it be such.
The cases referred to, as authorities, by this defendant’s counsel, do not seem to us to apply. They are cases where the plea of nul tiel corporation has been sustained on the ground either of some condition precedent to the organization, to be performed by the corporation and omitted to be done, or where a forfeiture has been established by judicial sanction.

Decree for Complainants.