Doyle, J.
1. If the defendant, Elizabeth Florence was, at the date of the execution of the notes, the owner of the real estate described in the petition, or any part of it, as her separate property, the judgment of the district court was wrong. "When a married women, owning a separate estate, executes a *525 promissory note, either for herself or as surety for her husband, the presumption is that she charges her separate property with the payment thereof. Such presumption cannot be overcome by testimony by the wife, that such was not her intention. Unless there are circumstances surrounding the transaction which show that such was not her intention, it is not material what her secret purpose was, and the presumption aforesaid will prevail.
The finding, therefore, by the district court, that she knowingly signed the notes as surety for her husband, is sufficient to bind her separate property (if she had any), notwithstanding the denial in her answer thiS| by the execution of the notes she made such charge, or the averment that she did not, by word or deed, promise to pay said notes out of her separate estate, or pledge the same for such purpose. Avery v. Van Sickle, 35 Ohio St. 270; Williams v. Urmston, Id. 296.
2. Was defendant, Elizabeth Florence, possessed of a separate estate at the date of the execution of the notes, in 1867 ? A considerable part of the argument of the case was devotpd to the rights of the parties, upon the assumption that the estate which the wife now holds came to her by virtue of her inheritance of the property prior to 1833, at which time the common law governed in respect to the marital rights of the husband. It being insisted upon one side that these were vested rights-which could not be affected by subsequent legislation. We are relieved from considering that question by the fact that the husband and wife, in 1860, united in conveying this land to a trustee, who afterwards conveyed the same to the wife. Whatever interest the husband had, passed by his deed to the trustee, and when the title became, again, vested in the-wife, his rights accrued under the law as it then stood. It is true, it is alleged, that these deeds were made for the sole purpose of partition, and it is insisted that no new title was created by such partition. The rule asserted in Tabler v. Wiseman, 2 Ohio St. 207; and Mc Bain v. MeBain, 15 Ohio St. 337, applicable to partition proceedings under the statute, that no new title is created thereby, does not apply to the deliberate conveyances of the parties, especially where *526 there is an independent consideration for such conveyances. In the present case the wife, in consideration of the conveyance to her of the land in question, which was improved, by the house in the erection of which this debt was incurred, released her inchoate right of dower in the remainder of the land. The rights of the parties, therefore, are to be determined under the law as it stood in 1860, and such modifications thereof as the legislature has since, within its constitutional power, made by statute.
By a series of statutes, commencing with the act of February 28,1816, the legislature of this state has sought to abridge, and in some particulars remove, the disabilities under which married women hol'd their estates at common law, and the control which their husbands had over such estates. By the common law, the husband, upon marriage, became vested with the wife’s estate of inheritance during coverture, and if he survived her, and issue capable of inheriting it had been born to them, he had a life estate, by curtesy, therein. The estate of the husband, either during coverture, or after the death of the wife, could be seized and sold upon execution for his debts, and he could convey and incumber the same. There was no provision which secured to her or her children, during the life of the husband, a home in even her own lands against the demands of his creditors, or his own extravagance or improvidence. To mitigate this generally recognized evil, the legislature passed the act of February 28, 1876, S. & O. Stat. 693 a, whereby it was enacted: “That the interest of any married man in the real estate of his wife, belonging to her at the time of their intermarriage, or which may have come to her by devise, gift or inheritance during coverture, or which mayliave been purchased with her sole and separate money or other property, and during coverture shall have been deeded to her, or to any trustee, in trust for her, shall not be liable to be taken, by any process of law or chancery, for the payment of his debts during the life of the wife, or the life or lives of the heir or heirs of her body.”
The second section of the act made all conveyances and incumbrances of the husband’s interest in such real estate of *527 the wife, void during the life of the wife, and during the life or lives of the heir or heirs of her body, unless by instrument of conveyance executed, attested and acknowledged according to the laws of this state for the conveyance or incumbrance of the estate of the 'wife in lands situate in this state. By other sections of the act provision was made for exempting from liability for the debts of the husband certain articles of personal property, dioses in action, demands, legacies and bequests.
This statute operated alike upon the interest, in the lands of his wife, which the husband had “ jure uxoris,” which was a freehold interest and lasted during coverture, and the estate by the curtesy, which was consummate upon her death. The first could not be seized upon execution, or conveyed or incumbered unless she joined therein, the second was equally secured, after her death, during the life of any heir of her body. See Jenney v. Gray, 5 Ohio St. 45.
This act was in force in I860 when, as we have shown, the wife’s present title to the lands was acquired.
By the act of February 11, 1824, Chase’s Statutes, 1313, the law of descent and distribution of the estates, real and personal, of persons dying intestate in Ohio was regulated and determined. By section 15 it was. declared, however, that nothing contained in the act should affect the right “ any person may have as tenant by the curtesy in any estate of inheritance, nor shall the right of dower claimed by any widow, in any estate of inheritance be impaired in any wise whatever.”
This left the estate by curtesy as it existed at common law; expectant upon marriage (as it is sometimes asserted), initiate upon the birth of a child capable of inheriting, consummate upon the death of the wife. This act was amended in 1835, Swan’s Stat. (1S41) p. 288, and in the place of the section last cited, the following was enacted :
‘‘Sec. 15. Nothing in this act shall be so construed as to affect the right which any person may have to any estate by the curtesy or in dower, in any estate of inheritance of any deceased person.”
While in the act of 1824 the common law estate of the *528 curtesy was saved from the operation of the act, the curtesy which is saved in terms by the act of 1835 is curtesy in the estate of a deceased wife. It is true that the statute was regulating descents and distribution, estates of deceased persons, nevertheless the change in the language has significance.
The act was again amended in 1853, and section 17 contained the entire section 15 above quoted, and added thereto this clause “ and surviving husbands, whether there has been issue born during the coverture or not, shall be entitled to the estates of their deceased wives by the curtesy.”
In Denny v. McCabe, 35 Ohio St. 576, it was insisted that by this statute, which eliminated from an estate by the curtesy the prerequisite, “ birth of issue,” an estate immediately vested in the husband, in all respects like unto curtesy initiate, by the mere facts of marriage and seizin of the wife, but it was held that such was not the effect of the act. That the marital right of the husband to the possession and control of the real estate of his wife was unaffected by the act. That in strictness this right is not an estate by the curtesy, though sometimes called curtesy expectant, but a mere possession by him in the right of the wife ; and that the statute operated only to enlarge the rights of “surviving husbands.” And see 10 Pa. St. 398; 1 Leading Cases in the Am. Law of Real Property, 259; 100 Ill. 367.
It -seems clear that by this legislation the rights of the husband in the real- estate of his wife were in these respects materially changed; i. e., the estate or interest which, by virtue of the marriage, was his, whether issue was born or not, and which entitled him to the possession and rents and profits thereof during coverture, was preserved to him, bnt with his power to convey or incumber it without his wife’s joining with him, and the power of his creditors to seize it upon execution, destroyed. His curtesy in the estate of his deceased wife, i. <?., curtesy consummate, was likewise saved to him, no longer dependent upon the birth of issue.
It would seem from this that whát was known at common law as “ curtesy initiate,” as distinguished from the freehold of the husband jure uxoria, and the right by the curtesy in *529 the estate of a deceased wife, has no place in this system. It could not be conveyed and incumbered by the husband, or seized upon execution. The right of the husband to curtesy consummate no longer depended upon it. The elements which gave it value as a vested estate are eliminated. See 1 Leading Cases Am. Law Real Property, 286; Denny v. McCabe, 35 Ohio St. 576 (where this precise question is adverted to but not decided); Bruner v. Briggs, ante.
The record in this case is silent as to whether there was issue born of this marriage or not, but whether there was or not we think no estate by the cui'tesy vested in him in 1860, when the title of the wife was received which was beyond the power of the legislature to abolish. Thus stood the law when the act of 1861 was passed, which provided as follows:
“ Any estate or interest, legal or equitable, -in real property belonging to any woman at her marriage, or which ma/y have come to her during coverture, by conveyance, gift, devise or inheritance or by purchase with her separate money or means, shall together with all rents and issues thereof, be and remain her separate property and under her sole control; and she'may in her own name during coverture, lease the same for any period not exceeding three years. This act shall not affect the estate by the curtesy of any husband in the real property of his wife after her decease; but during the life of such wife or any heir of her body, such estate shall not be taken by any process of law for the payment of his debts, or be conveyed or incumbered by him unless she shall join therein with him in the manner prescribed by law in regard to her own estate.”
Sec. 5. This act shall not affect any lights which may have become vested in any person at the taking effect thereof.”
This act, as to future acquired estates, stripped the husband of his right to the possession-and to rents and profits of his wife’s lands. As to previously acquired estates, such right, being vested, was left unimpaired. It saved to him an estate by curtesy after her decease.
JBy an amendment to this act, passed March 23, 1866, the power of the wife to make contracts in her own name, with reference to her separate property, was enlarged, and for any *530 liability growing out of such contracts rendering such separate estate subject to execution, in any action against lier. The effect of this statute is to impress upon the general property of the wife, acquired in the manner defined by the act, the characteristics of separate estate, whether such property was thus acquired before or after its passage. 16 Ohio St. 518.
It may not be in all respects like the separate estate which existed in equity, nor is it essential that it should be. It is a statutory separate estate, which may exist, if the legislature so declares, in lands subject to the marital rights of the husband or in the language -of the statute, in any estate or interest, legal or equitable in lands.
It did not and could not affect vested rights. It was decided in Logan v. Thrift, 20 Ohio St. 62, that such estate, i. en lands purchased before the passage of the act of 1861, could not be subjected, after the passage of the act, to the payment of a note previously -executed, for the manifest reason that at the time the wife signed the note she had no separate estate. In Fallis v. Keyes, 35 Ohio St. 265, it was held that land acquired after the act of 1861, could not be subjected'to the payment of an obligation entered into by her, previous to the passage of the act, for the same reason, to wit: that she had no separate estate when the obligation was entered into and hence there could be no intention to charge it. In these cases the rights of the parties .were fixed before the passage of the act.
But the legislature might, within its constitutional power, enlarge the power and control of the wife, over her own property, so as to affect her subsequent conduct with reference to it. It might authorize her to convey or incumber it without the consent of her husband, leaving his vested rights, however, unaffected. It might enlarge her general property into separate property, if it was not thereby subjected to existing liabilities which could not be enforced against it while it remained her general property. It certainly could confer upon her the power to charge such estate with the payment of future debts or obligations.
Construing this act to have the effect of converting the *531 general property of the wife into separate property, without affecting vested rights, does not take away or impair any right of the wife, nor without her consent create any new obligation. With respect to past transactions it does not attach any disability or liability. It does enable her however, with respect to her future contracts, to charge such property as her separate property. The rights of the husband which vested in him prior to the act of 1861 are not affected. He is still entitled jure uxoris to the possession and rents and profits during' the joint lives of himself and wife. That is the only right which vested in him at the date of the conveyance to the wife in 1860. If he survives her he will be entitled to an estate by the curtesy in the lauds of which she dies seized. Subject to the marital right of the husband she can charge this estate, as her separate property, by contracts or obligations entered into by her, subsequent to the passage of the act of 1861.
We do not overlook certain expressions in reported cases in Ohio which are in conflict with the views here expressed. In Clark v. Clark, 20 Ohio St. 128, the question was whether the wife could maintain ejectment upon a deed to her of lands, executed before 1861, and containing no words creating a separate estate. It was held that she could not for the very manifest reason that the husband was entitled to the possession of the land during their joint lives. That the rights of the husband stood unaffected by the act of 1861. So say we. The statement found in the opinion that, under the deed, the husband had an inchoate estate of curtesy in the lands, with the present right of possession, is a misstatement. His present right of possession is independent of any estate by the curtesy.
“ It has 'sometimes been said that a husband is tenant by the curtesy initiate by the marriage, but there is no curtesy before the birth of issue; for though the marriage is the foundation of the whole, it does not constitute it at the common law. The husband indeed becomes seized of a freehold by the marriage, but it is his wife’s freehold, not his, insomuch that both must do homage for it. In contemplation of law, therefore, her person is his person, and her seizin h'i3 *532 seizen. After issue born he has a separate estate.” Chief Justice Gibson in Lancaster Co. Bank v. Shaffer, 10 Pa. St. 398. See 2 Mich. 94 ; 15 Mich. 60 ; 22 N. Y. 517 ; 28 Barb. 343 ; 9 Ind. 184; also 9 Ind. 37. In Clark v. Clark, supra, it is said by the court: “Lands conveyed to a married woman prior to the act of April 3, 1861, do not by virtue of that act become the separate property of the wife.” The only question however before the court, was whether the act of 1861 divested the husband of his marital light to the possession, so as to enable the wife in her own name to maintain an action in ejectment, and the quoted proposition must be read in the light of that fact. The act of 1861 certainly.-did not convert his right of possession into the separate property of the wife, because it was a vested right and the act could not and did not purport to have that effect.
An expression in the opinion in Fallis v. Keyes, supra, seems to imply that the act operated on future acquired estates only. But the property of the wife in that case was undoubtedly her separate property, admitted to be so, acquired after 1861, and the question being whether it could be charged with obligations entered into prior to 1861, this question was not before the court and it did not attempt to decide it. It follows from what has been said, that the rents and profits of the land in question cannot be subjected to the payment of these notes. They belong to the husband during the joint lives of himself and wife. Subject thereto, however, the notes are a charge upon the wife’s estate, which can be sold, if necessary, to pay them.

Judgment reversed.