Williams J.
It is not urged here, that the petition does not state a cause of action. The complaint is, that the demurrer to the answer was sustained. The allegations of the petition are not controverted; but the plaintiff in error contends, that upon each of the following grounds, the averments of the answer are a sufficient defense to the action, viz.: 1. The instrument sued on, was procured by misrepresentation ; 2. The subscription was a conditional one which the railroad company was without corporate authority to receive ; 3. That it was an implied condition of the subscription, that a first-class road should be constructed between the termini called for in the charter, which condition was not performed ; 4. By the sale and abandonment by the company of parts of its road, the obligation of the subscription, if it were otherwise binding, was discharged, and 5. That the company so changed its charter as to divert the line of the road from one of the counties called for in its articles of incorporation, which operated to release the subscription.
1. The allegations of the answer on the subject of the misrepresentations, are contained in that paragraph numbered as the first defense, and are to the effect, that the agents of the company who obtained the subscription, gave it out in speeches, that the company intended to build the road it was incorporated to build, between the termini named in its arti *294 cles of incorporation, and that it did not do so, but thereafter sold, conveyed and abandoned parts of the proposed road. It is not alleged that these speeches, or any representations, were fraudulently made; nor, that when made, there was not a bona fide intention to build the road as stated. The fact that the company was incorporated for the purpose of building the road, would naturally give rise to the presumption that it intended in good faith to build it according to the articles of incorporation, and, if any part of it was thereafter sold or abandoned, that subsequent exigencies or circumstances made it necessary, or advisable to do so. Then, these speeches related entirely to the future purpose and intention of the company. That false statements made by an authorized agent of a corporation in regard to the past or present status of the corporate enterprise, or of material matters connected therewith, whereby subscriptions are obtained, may be fraudulent, and defeat a recovery thereon, is not disputed. But representations which are matters of opinion in regard to the future prospects or purposes of the corporation, are not such fraudulent representations as constitute a defense to an action on a subscription, though the subscriber believed and relied on them. It is said by Mr. Cook, in his work on stock and stockholders, that the essential allegations in a defense to a subscription on the ground that it was obtained by fraud, are, “ that a material misrepresentation of a question of fact was made, setting out fully the fact misrepresented; that the person making the misrepresentation thereby bound the corporation ; that the subscriber was thereby induced to make his subscription ; and that upon discovery of the fraud, he immediately disaffirmed the contract.” Cook on Stock and Stockholders, Section 165.
The established rule in this state is, that “ One seeking to be relieved from a contract, on the ground of alleged false representations, must show that there were, in fact, false representations of a material fact, upon which he relied, and upon which, from the circumstances of the case, he had a right to rely, and, in doing - so, was misled to his injury.” Insurance Co. v. Reed, 38 Ohio St. 283. Representations in *295 regard to a future intention, purpose or expectation, do not come within the rule, or afford ground for relief from a contract induced by them, especially where it is not shown, that the representations were fraudulently made for the purpose of deceiving.
2. The principal question in the case, arises upon the second defense, the substance of which is, that the defendant’s subscription is a conditional one, and, at the time it was made, the capital stock of the company had been increased, and actual bona fide subscriptions to the amount of twenty per centum of the capital stock, so increased, had not then been obtained, nor had ten per centum of such capital stock been expended in the construction of the road.
The claim is, that the railroad company had no corporate power to receive the defendant’s subscription, because it had not then obtained unconditional subscriptions to the amount of twenty per centum of its capital stock, or expended ten per centum of its authorized capital in the construction of its road. This claim is based upon section 8298 of the Revised Statutes which provides: “ The directors of a company which has expended in the construction of its road ten per centum of its authorized capital, and has obtained actual bona fide subscriptions to its capital stock to the amount of at least twenty per centum thereof, may receive subscriptions to its capital stock, payable in such instalments, dependent upon the completion of the whole or any part of its road so that cars may pass over the same, as its directors may deem expedient, and upon full payment thereof may issue certificates of stock therefor.”
Unless restrained by statute, corporations may receive conditional subscriptions to their stock at any time after their actual incorporation. “A conditional subscription to stock, taken and accepted by a corporation after its incorporation, is legal by the common law of all the states.” Cook on Stock and Stockholders, section 82. And it is said by White, J., in Ashtabula and New Lisbon R. R. Co. v. Smith, 15 Ohio St. 336, that, “Except in New York, conditional subscriptions, in the absence of a special prohibition so far as *296 we have observed, have been sustained, as authorized, and not in conflict with public policy.”
No special prohibition is found in section 3298, against a railroad corporation receiving conditional subscriptions. The most that can be claimed from the section is, that, it having specified the eases in which such conditional subscriptions may be received, there is a want of authority to receive them otherwise than as therein provided. If this be admitted, does it necessarily follow that a subscription not in all respects in conformity to the statute may not be enforced ? “ The rule seems well established,” says Boynton, J., in Hays v. Galena Gaslight and Coal Co., 29 Ohio St. 340, “ that where a contract has been executedand fully performed, on the part either of the corporation or of the other contracting party, neither will be permitted to insist that the contract and such performance by one party were not within the cdrporate power of the company.”
Generally, after the acceptance by the corporation, of a conditional subscription which it is authorized to take, the subscriber is bound until performance of the condition, to await such performance; he cannot withdraw the subscription unless the performance is unreasonably delayed. Cook on Stock and Stockholders, section 84. But a conditional subscription, which is not a present valid contract, may be a continuing offer to subscribe upon the specified conditions, and when those conditions are performed, if the offer be not before withdrawn, it may then become an absolute and unconditional subscription. The difference between the two classes of subscriptions is, that the former, becomes binding when accepted, and the latter, only when the condition is performed, and it may, at any time before then, be withdrawn. If not so withdrawn, it becomes an absolute subscription. In Ashtabula & New Lisbon R. R. Co. v. Smith, supra, White, J., speaking of the conditional subscription to the capital stock cif the railroad company involved in that ease, and the effect of the performance of the conditions by the company, said: “ The subscription was designed as, and was in fact, a standing or continuing proposition, upon which'the plaintiff was *297 not expected to act, until the time arrived for the final location of its road. Having been delivered for' this purpose, and acted on by the plaintiff, after the condition has been complied with, it became an absolute subscription.” In the case óf The Mansfield Coldwater & Lake Michigan R. R. Co. v. Stout, 26 Ohio St. 254, it is said by McIlvaine, J., “ There has been some contention whether the instrument sued on, is to be regarded as a subscription of stock, subject to a condition precedent, or as a mere offer to subscribe, when the conditions named might be performed. This question we deem to be immaterial in this case, as there is no pretense that the offer,. if a mere offer it be, was at any time withdrawn. The important question is, have the conditions been performed?”
The conditions expressed in the defendant’s subscription, it is alleged in the petition, were fully performed, and upon this, no issue is raised by the answer. If it be conceded, therefore, that the instrument executed by the defendant, was not, by reason of the provisions of the statute, a valid and binding subscription to the capital stock when subscribed and delivered to the company, it was, at least, a continuing offer to pay the amount stipulated, upon the performance of the conditions therein specified; and, while the defendant, at any time before such performance, might have withdrawn his offer, he did not, and the conditions having been fully complied with by the railroad company, he cannot now, we think, defend against the payment of the subscription on the ground that the company was without corporate authority to receive it. It is not important, whether the subscription is enforced on the ground that on the performance of the conditions it became an unconditional subscription, or on the ground of estoppel. The legal result is the same.
3. 'Was it one of the conditions of defendant’s subscription that the company should build a first class railroad?
In that part of the answer, numbered as the eighth defense, it is alleged that the charter of the company called for a “ first class railroad,” and the defendant made his subscription for the purpose of building “ a good, substantial, *298 first class railroad,” and that his subscription “ does not become absolute and binding until such good, substantial, first class railroad is built of first class material; ” and, such road not having been built, the company has, he claims, failed to comply with all the conditions of hjs subscription.
It is not contended that any such condition is expressed in the subscription. In fact it is not. Nor, do we think it is implied. It appears from the petition, that the company was incorporated under the laws of Ohio, in 1877. It therefore had no special charter, but became a corporation under the general laws of the state, on the subject. Our attention has not been called to any provision of those laws making it obligatory upon a railroad company incorporated thereunder, to make its road conform to the standard contended for by the defendant, before it can enforce subscriptions to its capital stock. We do not question, but that the defendant might have expressly stipulated in his subscription that it should be payable only upon the construction of such road, but he has not done so.
4. The further claim is made, that the railroad company by the sale and abandonment of parts of its road, discharged the defendant from the obligation of the subscription.
The allegations of the answer upon this subject, are, in-substance, that after the defendant’s subscription was obtained, the company sold and conveyed to another railroad company that part of its road west of Hillsboro; and that another portion of the road, east of Hillsboro, has been practically abandoned. It is not alleged that the sale was illegal or irregular; and, in the absence of any averment to the contrary, it will be presumed that the sale was in conformity to law.
Section 3409, of the Revised Statutes, authorizes a railroad “company, owning in whole or in part any road-bed and right of way for a railroad within this state, including those acquired by purchase at judicial sale, which, from lack of means, or other cause, is unable to complete the construction of its proposed line of road thereon,” to “sell, assign, and transfer the same, or any part thereof, to any other company *299 incorporated under the laws of this state, with authority to construct and operate a railroad over the same route, or any part thereof, which transfer shall include all work done upon such line of road, together with all material furnished therefor, not exempted by the terms of the grant, with all rights, privileges, and easements, as fully as the same are or may be possessed by the company making the same, and shall to the same extent, vest the title of and the right to enjoy the same in such grantee.” And section 3412 provides, “ No transfer shall be made against the dissent of any stockholder, expressly declared and filed in writing at such meeting, with out the guaranty of the company grantee that it will cause to be issued to him certificates of its capital stock, equal in amount to his pro rata interest as a stockholder of the grantor, in the amount for which the property is sold.”
, These statutes were in force when the defendant executed the instrument which is the subject of the suit, and when its conditions were performed by the company, and, according to the decisions of this court, they entered into and became part of the agreement. Jewett v. Railway Co., 34 Ohio St. 601. That the company might exercise its right under the statute to sell all or part of its road, must be held to have been within the contemplation of the parties at the time the subscription was made. Mansfield, Coldwater & Lake Michigan R. R. Co. v. Stout, 26 Ohio St. 241.
It is not averred that the defendant objected to the sale or transfer, or that he filed any writing, expressing his dissent therefrom. If the sale occurred before the liability of the defendant became fixed by the performance of the conditions of his subscription, so that he could not, as a stockholder, file in writing his dissent as provided by the statute, he might, for that reason, or without assigning any reason, have withdrawn his offer to make the payment he promised, and thus avoided all liability. He chose, however, not to withdraw it on that, or any other account; but waited until the company fully complied with the conditions of his promise, and he must be regarded as acquiescing in such sale; as much so, as if he were a stockholder and entered no dissent.
*300 In regard to the abandonment, it is well settled, that neither the failure of a railroad company to complete its road, or the non-user of a part of it, constitutes ■ a defense to a suit on a subscription to its capital stock, unless such failure or non-user, violates some condition to that effect, expressed in the subscription. It is laid down in Cook on Stock and Stockholders, section 189, as the settled doctrine, that, “a subscriber cannot defeat the subscription by the fact that the corporation has not completed and has no intention of completing the road in its entirety;” and, “an abandonment of part of the enterprise,” the same author says, “ is no defense.” Neither the sale nor the abandonment effected a change in the identity of the company to which the defendant subscribed. The case is unlike Railway Co. v. Hinsdale, 45 Ohio St. 556, where it was held, that a conditional subscription made to one railroad company, could not be enforced bjr another to which the defendant did not subscribe. The latter company could not make the subscriber its debtor, by performing the conditions of the subscription.
5. The only remaining question in the case, which we deem it necessary to notice is, whether the change, which the answer alleges the railroad company made in the line of its road, released the defendant from the obligation of his subscription. It was held in Nugent v. The Supervisors, 19 Wall. 241, that “ although a subscriber for stock in a company is released from his subscription by a subsequent alteration of the organization, or purpose of the company, this is only where such alteration is a fundamental one, and when, in addition, it is not provided for, or contemplated by either the charter itself or the general laws of the state.”
Section 3275, of the Revised Statutes of this state, which was in force when the defendant subscribed to the stock of the company, and which thus became a part of the contract, expressly authorizes a railroad company, the line of whose road has not been finally located in whole or in part, when found necessary by it in order to avoid dangerous or difficult curves or grades, or dangerous or unsubstantial grounds.or foundations or for other reasonable cause,'to pass through a county *301 not named in the articles of incorporation, or to avoid passing into or through a county named therein, other than a county in which a terminus of- the road has been-fixed by the articles of incorporation, by making and 'filing with the secretary of state a certificate declaring such necessity and the cause thereof. The next section, 3276, provides that “when the line of any road is, under the preceding section, diverted from a county named in the, articles of incorporation, the company shall be liable in damages, if any be caused by such change or diversion, to any person owning land in such county, and all persons who subscribed' to the capital stock of the company on the line of that part of the road so changed shall be released from all obligations to pay their subscriptions.”
It will be noticed, that by this section, which defines the rights of subscribers to the capital stock of a railroad company which under the provisions of the preceding section has changed the line of its road, such subscribers are released from the obligations of their subscriptions, only when the road is diverted from a county named in the articles of incorporation. The allegations of the answer upon this subject are, that the “ company did on or about the 15th day of March, 1883, take the necessary legal steps to, and did alter its charter by providing for the extension of its railroad through the county of Pickaway.” It thus appears from these allegations, that the only change made by the company in the line of its road, was to extend it through a county not named in the articles of incorporation, and that the steps by which the change was effected, were legal. The answer contains no averment that the line of the road was diverted from any county named in the articles of incorporation, and in this, it fails to state a defense. *
The answer is also defective, if .the change was made under section 3272, of the Revised Statutes. That section provides, “ A company may, by a resolution adopted by a majority of its board of directors, at a meeting thereof duly called for the purpose, with the written consent of three fourths in interest of its stockholders, change the line, or any part there *302 of, and either of the proposed termini, of its road; but no change shall be made which will involve the abandonment of any part of the road, either partly or completely constructed; and any subscription of stock made upon the faith of the location of such road, or a part thereof, upon any line abandoned by such change, shall be canceled at the written request of the subscriber not having consented thereto, filed with the secretary or other chief officer of the companjq within six months after such change.” It is no where alleged in the answer, that the defendant requested the cancellation of his subcription, as provided in this section of the statutes, nor that his subscription was made upon the faith of the location of any part of the road on any line abandoned by the change. On the contrary, it is averred in the first paragraph of the answer, that the subscription was “based upon the completion of such parts of said proposed road as lie between the Scioto Valley railroad and the town of Adelphi in Ross county, Ohio,” which parts of the road, it is admitted, were completed. We are of opinion there was no error in sustaining the demurrer to the answer, and
The judgment is affirmed<