Nichols, C. J.
The facts in this case are wholly undisputed and the only question for the determination of this court is the nature and character of the title of Laura Calvert in the real estate in question at the time of her death in 1902, that is, whether her title was one by inheritance or by pur- . chase. If her title is one by purchase, then under the statutes of Ohio one-half of this property would descend to the heirs of Laura Calvert and the other half would descend to the heirs of her husband, William H. Calvert.
It is the law of this state, however, as determined by this court many years ago in the case of Freeman et al. v. Allen et al., 17 Ohio St., 527, thát in a situation similar to the one under consideration the title held by Laura Calvert at the time of her death in so much of the property as came to her by devise would remain a title by descent notwithstanding the proceedings in partition heretofore referred to, but that the remaining title *71 acquired by such proceedings was a title by purchase, unless the fact that the sheriff’s deed in Freeman v. Allen, supra, made in response to an election to take (wherein it is to be distinguished from the case at bar), makes some essential difference. This proposition is conceded by counsel of all interested parties.
It is quite clear that had Laura Calvert and her cotenants in this property quitclaimed to one another for their respective interests in the property of Joseph McDougal, and she (Laura Calvert) then acquired the same part she afterwards acquired in the partition proceedings, her title to that part (one-half) which came to her by devise would have remained a title by descent.
It is equally clear that if the commissioners in partition had found that the property of Joseph McDougal, deceased, could, without manifest injury to the value of the same, have been divided by métes and bounds among the several parties in part and portion as they were severally found entitled in the former partition proceedings, and had then and there set off to Laura Calvert the one-half part thereof, such part thereof, to-wit, the one-half that came to her by devise, would have remained an estate by descent.
This proposition was definitely settled in our state by two cases, one being Tabler v. Wiseman et al., 2 Ohio St., 208, where Ranney, J., says: “It [the partition proceeding] operates upon the possession, dissolves the unity’before existing, and enables each of the owners to know, possess, and enjoy, his own share of the common estate in severalty. * * * It *72 is well settled that such a proceeding does not decide title, or create any new title. It barely dissolves the tenancy in common, and leaves the title as it was, except to locate such rights as the parties may have, respectively in distinct parts of the premises, and to extinguish it in all others.”
The second case is that of McBain v. McBain et al., 15 Ohio St., 337, a part of the third proposition of the syllabus reading: “Parties to proceedings in partition acquire no new title thereby.”
• There are-four principal ways in which cotenants in land in Ohio can dissolve or sever the common estate:
First. By amicable partition or division through the medium of quitclaim deeds.
Second. By actual division, by metes and bounds, to be made by commissioners in partition.
Third. By appraisement and subsequent election to take by a party to the proceeding.
Fourth. By judicial sale conducted by the sheriff acting under order of the court.
. In the first, second and third methods we ascerain by well-settled adjudications that the nature and extent of the title is unchanged, the estate of the former cotenant remaining an estate of inheritance.
' Our sole, inquiry here is: Does the estate of the cotenant change if in such a proceeding she becomes a successful bidder for a portion of the real estate in all of which she owned the undivided one-half ?
It is true that the property for which she bids and which sale is approved by the court is con *73 veyed to her by the sheriff, and it is vigorously contended by counsel for* defendants in error that this is the one over-shadowing and controlling fact, it being urged that the deed constitutes an entirely new title in all of the real estate so conveyed, and that the former conditions are but title history so to speak.
It is equally true in the case of an election to take, that the property is conveyed to the successful bidder by the sheriff, the only difference being that in the last-named event the decree recites that the purchaser has settled with the parties direct, although this is really a fiction, for the usual practice is to pay to the sheriff the full amount due for his distribution to the other interested parties. ■
In the case under consideration Laura Calvert, owning one-half of certain property, purchased at the sale a little more than one-half thereof. She made no payment to the sheriff except for the excess over her distributive share, receipting to him for the balance covering her distributive share.
She could not be said to have purchased her own property. The one-half of it still remained an estate of inheritance. Her title to the part she did not buy was extinguished by the partition proceedings.
The estate which she in reality purchased was the one undivided half owned by the other devisees of Joseph McDougal. As to this half her title there-, after became an estate by purchase.
It is claimed by the plaintiff in error that since all but the excess of $1,890 represented her distributive share in the whole of the property, that thereby the title which she had after the sheriff’s *74 deed to her was all an estate of inheritance, as it in reality represented just what she in fact took by the will of Joseph McDougal.
We cannot agree to this view, any more than we can to the contention of the defendants in error that the whole estate of inheritance was extinguished by the sale and her title became one by purchase as to all the land, notwithstanding the fact that the very decree of the court under which the sale of the very land she bought was had, avers and decrees that “she [Laura Calvert] is the owner of the undivided half of the same by devise.” We think it to be an illogical and unsound rule of law which would hold that the nature of the title would be altered in the one-half which' she already owned by the mere form of acquiring- by sale in partition proceedings the other half which her cotenants owned.
Had Laura Calvert acquired the title of her co-tenants in all the real estate of which Joseph Mc-Dougal died seized by the proceedings in partition, or by any other method, it would have only extended her ownership of the one-half to an ownership of the entire estate, and in such an event her title in the whole would necessarily have been one-half by inheritance and the other half by purchase. Since she purchased less than all and a little more than half of the whole, we can find no valid reason for holding otherwise than we would hold if she had purchased the whole.
It is the finding of this court that Laura Calvert died the owner of an estate by inheritance in the property described in the petition filed in the 'common pleas court to the extent of one-half there *75 of and of an estate by purchase to the extent of one-half thereof, and that the heirs of Laura Calvert are entitled to all of that part of the same which is defined to be title by inheritance and one-half of the remainder, in all a three-fourths part thereof.
We do further find that the heirs of William H. Calvert are entitled to the other half of the one-half part, i. e., a one-fourth part thereof.
The judgment of the circuit court is therefore modified to conform to the finding of this court and the cause is remanded to the common pleas court of Hamilton county for such further proceedings as may be required by law.

Judgment modified and cause remanded.

Shauck, Johnson, Donahue, Wanamaker and Wieicin, JJ, concur.