**[Cite as *Fannie Mae v. Hicks*, 2016-Ohio-8484.]**

<span style="color:red">**[Please see vacated opinion at 2016-7483.]**</span>

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 103804**

---

## FANNIE MAE

PLAINTIFF-APPELLANT

vs.

## LYNDA L. HICKS, ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-746293

**BEFORE:** Stewart, J., Keough, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** December 29, 2016

**ATTORNEYS FOR APPELLANT**

John E. Codrea
David B. Bokor
Matthew P. Curry
Matthew J. Richardson
Justin M. Ritch
Manley, Deas & Kochalski, L.L.C.
P.O. Box 165028
Columbus, OH 43216


**ATTORNEYS FOR APPELLEE**

John Wood
281 Corning Drive
Bratenahl, OH 44108

Stephen D. Williger
Thompson & Hine, L.L.P.
3900 Key Center
127 Public Square
Cleveland, OH 44114

**Also Listed:**

Unknown spouse of Lynda L. Hicks, pro se
1244 Adams Street
Fairborn, OH 45324

ON RECONSIDERATION[1]

MELODY J. STEWART, J.:

{¶1} Plaintiff-appellant Federal National Mortgage Association ("Fannie Mae") appeals a trial court order that simultaneously denied its Civ.R. 60(B)(4) motion to vacate a foreclosure sale while requiring that it pay $110,000 in restitution to defendant-appellee Lynda Hicks pursuant to R.C. 2329.45. For the reasons that follow, we reverse the decision of the trial court.

{¶2} The facts of this case involve a prior appeal, *Fannie Mae v. Hicks,* 2015-Ohio-1955, 35 N.E.3d 37 (8th Dist.). In that case, Hicks executed loan documents (a note and mortgage) with All American Home Lending, Inc. in 2004 to finance the purchase of a home in the city of Shaker Heights. All American later assigned the mortgage to Chase Manhattan Mortgage Corporation. When Hicks failed to make payments on the note, Chase Manhattan accelerated the loan and assigned the mortgage to Fannie Mae.

{¶3} Fannie Mae brought a foreclosure action against Hicks. In the complaint, Fannie Mae alleged that it was assigned the subject mortgage and was a "person entitled to enforce the note." Fannie Mae attached copies of the note and mortgage to the

[1] The original announcement of decision, *Fannie Mae v. Hicks*, 8th Dist. Cuyahoga No. 103804, 2016-Ohio-7483, released October 27, 2016, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

complaint, along with an allonge containing a special endorsement of the note from Chase Manhattan to Fannie Mae. During the course of litigation, Fannie Mae amended its complaint twice to reflect the fact that the original note executed by Hicks in favor of All American was lost by Chase Manhattan before it was purchased by Fannie Mae. Despite this irregularity, Fannie Mae moved for summary judgment in the foreclosure action. In its motion for summary judgment, Fannie Mae conceded that it was not entitled to enforce the lost note under R.C. 1308.38, but nevertheless argued that it was entitled to foreclose on the property by virtue of the mortgage assignment alone. Hicks filed a motion for summary judgment arguing that she was entitled to judgment as a matter of law because Fannie Mae conceded it could not enforce the note and the ability to enforce the note is a prerequisite to establishing one's right to foreclose. The trial court granted Fannie Mae's motion and denied Hicks's motion. Hicks appealed.

{¶4} On appeal, this court concluded that the assignment of the mortgage alone was insufficient to sustain an action in foreclosure and that Fannie Mae must also be a person entitled to enforce the note in order to foreclose on the property.[2] The panel of this court further concluded that Chase Manhattan retained authority to enforce the note as the last party in possession of the note before it was lost. The grant of summary judgment in favor of Fannie Mae was reversed, and the case remanded to the trial court with instructions to enter summary judgment in favor of Hicks.

---

[2] The Ohio Supreme Court recently affirmed this point of law in *Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, 60 N.E.3d 1243, ¶ 27.

**{¶5}** While the resolution of the appeal was pending in this court, the trial court proceeded with the foreclosure sale. In December 2014, Fannie Mae purchased the property for a $110,000 credit bid[3] and the sale was confirmed. Hicks neither requested a stay of the confirmation proceedings nor appealed the confirmation order to this court. However, Hicks did move the trial court for a stay of the distribution of the sale proceeds pending our decision on the foreclosure action. The court denied the motion, and Hicks did not seek any further stays. This court issued its decision in May 2015. One week after the decision, Fannie Mae was issued the deed to the property. The deed was recorded on June 12, 2015.

**{¶6}** Following the release of this court's decision, Hicks filed a proposed judgment entry with the trial court that sought to have the court order Fannie Mae to pay her restitution in the amount of $110,000, the foreclosure purchase price of the property, pursuant to R.C. 2329.45, and dismiss the foreclosure action with prejudice. Fannie Mae opposed the proposed order and asked the court to vacate the confirmation of sale and deed pursuant to Civ.R. 60(B)(4), which allows a court to vacate a judgment when "the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." In its Civ.R. 60(B) motion for relief

---

[3] A credit bid allows a secured judgment creditor to bid on property up to the amount of the debt owed, in lieu of making a cash bid. *See, e.g.*, *Benchmark Bank v. Weaver*, Franklin C.P. No. 13 CV 011809, 2014 Ohio Misc. LEXIS 9815 (June 2, 2014); *see In Re Philadelphia Newspapers, L.L.C.*, 599 F.3d 298 (3d Cir.2010).

from judgment, Fannie Mae emphasized that the balance of equities required the court to vacate the confirmation of sale so that Fannie Mae can return title of the property to Hicks, rather than order restitution in the amount of the purchase price, because the latter remedy would result in a windfall to Hicks. Additionally, Fannie Mae argued that an order of restitution was improper under R.C. 2329.45 because Hicks failed to meet the requirements of the statute that, according to Fannie Mae, requires that the property be unrecoverable and that Hicks had previously obtained a stay of the distribution of proceeds.

{¶7} Hicks opposed Fannie Mae's motion for relief from judgment. Her opposition brief argued that the plain language of R.C. 2325.03 and 2329.45 prevents Fannie Mae from returning title, and that the correct remedy in situations where property is sold pending appeal and the judgment is reversed is to order restitution.

{¶8} After considering both sides of the argument, the trial court issued an order denying Fannie Mae's Civ.R. 60(B)(4) motion and further ordered that Fannie Mae pay Hicks $110,000 in restitution in accordance with R.C. 2329.45.

{¶9} In the appeal now before us, Fannie Mae raises two assignments of error: 1) that the court erred by denying its Civ.R. 60(B)(4) motion to vacate the confirmation of sale and deed; and 2) that the court erred as a matter of law, or in the alternative, abused its discretion by ordering Fannie Mae to pay $110,000 in restitution to Hicks. We find merit to Fannie Mae's position, but for reasons different than those it argues. Because the assignments of error are interrelated, we address them together.

**{¶10}** R.C. 2325.03 states that:

The title to property, which title is the subject of a final judgment or order sought to be vacated, modified, or set aside by any type of proceeding or attack and which title has, by, in consequence of, or in reliance upon the final judgment or order, passed to a purchaser in good faith, shall not be affected by the proceeding or attack; nor shall the title to property that is sold before judgment under an attachment be affected by the proceeding or attack. "Purchaser in good faith," as used in this section, includes a purchaser at a duly confirmed judicial sale.

This section does not apply if in the proceeding resulting in the judgment or order sought to be vacated, modified, or set aside, the person then holding the title in question was not lawfully served with process or notice, as required by the law or Civil Rules applicable to the proceeding.

**{¶11}** R.C. 2329.45 states:

If a judgment in satisfaction of which lands or tenements are sold is reversed on appeal, such reversal shall not defeat or affect the title of the purchaser. In such case restitution in an amount equal to the money for which such lands or tenements were sold, with interest from the day of sale, must be made by the judgment creditor. In ordering restitution, the court shall take into consideration all persons who lost an interest in the property by reason of the judgment and sale and the order of the priority of those interests.

**{¶12}** R.C. 2325.03 and 2329.45 evidence a general predisposition to favor and protect purchasers who have obtained title to property through judicial foreclosure sales. Pursuant to R.C. 2325.03, title to property remains with a good faith purchaser despite

attempts after final judgment, to set aside, vacate or modify a judgment under which the property was purchased.[4] *Moor v. Parsons*, 98 Ohio St. 233, 120 N.E. 305 (1918) (explaining former analogous statute G.C. 11633); *see also* Civ.R. 60(B) (staff notes contained in the commentary). Similarly, R.C. 2329.45 protects purchasers from losing title, or from title otherwise being affected, by the reversal of a foreclosure judgment on appeal, while also providing a remedy in the form of restitution to the former, aggrieved title holder. By their nature, the statutes are shields, not swords. Their intent is to safeguard a purchaser's title from legal attack so that potential purchasers are not dissuaded from investing in foreclosed properties for fear of losing their investment. *See, e.g.*, *Moor* at 244-245.

{¶13} Hicks argues that R.C. 2325.03 specifically prohibits title from being set aside or affected by an attack on a final order conferring title and therefore contends that Fannie Mae cannot convey title back to her through a Civ.R. 60(B) motion to vacate the confirmation order. Accordingly, Hicks maintains that her only remedy is restitution under R.C. 2329.45. Although a plain reading of the statutes seemingly supports Hicks's interpretation, this case is distinguishable from most cases discussing the protections and remedies of R.C. 2325.03 and 2329.45 because Fannie Mae is both the

---

[4] The R.C. Chapter 2325 is titled "relief after judgment." Although now repealed, former section R.C. 2325.01 set forth a list of grounds for vacation of a voidable judgment. Civ.R. 60(B)(commentary). Courts had formerly interpreted R.C. 2325.03 as a limitation on a party's right to proceed under R.C. 2325.01. *See Stewart v. Kellough*, 104 Ohio St. 347 (1922), syllabus (interpreting former analogous statute). Civ.R. 60(B) now provides the process and grounds for seeking relief after judgment. Accordingly, it follows that R.C. 2325.03 serves as a limit on motions to vacate foreclosure judgments under Civ.R. 60(B).

foreclosing plaintiff and the purchaser of the property. As such, neither statute applies in this instance.

{¶14} In *Cent. Natl. Bank v. Great Lakes Distilleries, Inc.*, 8th Dist. Cuyahoga No. 16905, 1939 Ohio Misc. LEXIS 1169 (Jan. 20, 1939), this court concluded that G.C. 11702, the former analogous statute with identical relevant language to R.C. 2329.45, "has no application whatsoever" when the plaintiff in a foreclosure action purchases the property at judicial sale, because the plaintiff "does not stand in the position of a stranger." *Id.* at 5, citing *Hubbell v. Admrs. and Heirs of Broadwell,* 8 OHIO 120, 1837 Ohio LEXIS 63 (1837); *McBain v. McBain*, 15 Ohio St. 337 (1864); *Ins. Co. v. Sampson,* 38 Ohio St. 672 (1883). This court further stated,

> [The] statutory provision [(G.C. 11702, former R.C. 2329.45)] is not effective under the facts in this case to preclude a reversal of the judgment entered in the trial court from operating to set aside, vacate and nullify everything done under and in pursuance of said judgment; we therefore conclude that the sale made under the first decree of foreclosure was vacated when the judgment, upon the authority of which the sale was made, was reversed by the Court of Appeals, which judgment of the Court of Appeals was not thereafter reversed or modified by the Supreme Court.

*Great Lakes Distilleries.*

{¶15} Consequently, *Great Lakes Distilleries* sets forth three conclusions relevant to the present appeal. First, that the former R.C. 2329.45 operates to protect the title of a third-party purchaser, not a party purchaser, where the judicial sale occurs prior to the reversal of a foreclosure order. Second, that the former R.C. 2329.45 does not operate to provide restitution to the defendant-debtor when the purchaser is not a third party.

And finally, that reversal of a foreclosure order in such instances operates, as a matter of law, to set aside, vacate, and nullify the sale of the property.

{¶16} *Great Lakes Distilleries* has not been overruled by the Ohio Supreme Court nor has any subsequent legislative action clarified the terms of R.C. 2329.45 to require an alternate interpretation. Accordingly, we find the holding in *Great Lakes Distilleries*, that R.C. 2329.45 applies only to third-party purchasers, persuasive in this case.[5] Indeed, this court's decision in *Great Lakes Distilleries* was not created out of

---

[5] In her motion for reconsideration, Hicks challenges this court's reliance on *Great Lakes Distilleries*, an unreported case from 1939. Hicks argues that pursuant to R.C. 2503.20, this court has no authority to recognize or sanction unreported opinions. The import of R.C. 2503.20 has been a topic of conversation over the years. *See e.g., State v. George*, 50 Ohio App.2d 297, 307, 362 N.E.2d 1223 (10th Dist.1977); Shaw, *The Legal Significance of the Unpublished Court of Appeals Opinion in Ohio*, 6 Cap.U.L.Rev. 393 (1977); Black, *Unavailing Ohio's Hidden Court*, 16 Akron L.Rev. 3 (1982). From those discussions, it appears that the purpose of the statute was to ensure the limited publication of unofficial reports and/or to ensure that parties and the court had ready access to all relevant cases that the court may rely on in making its decision. *See id.* According to the Tenth District, access to opinions was thought to be ensured when only officially reported opinions (those reported by the Supreme Court of Ohio) were used. *See George* at 309. Nevertheless, over the years the Supreme Court and District Courts have consistently relied upon and cited to unreported cases in their opinions. *See id; Shaw; Black.* Because of this, there developed somewhat of a consensus that the statutory prohibition on the use of unreported cases is more directory than mandatory. *Id.* Moreover, traditional legal principles dictate that appellate courts should follow their precedent unless there is a valid legal reason for deviating from or reversing precedent. *George* at 309.

Thus, because *Great Lakes Distilleries* is factually identical to this case, relies on reported Ohio Supreme Court cases that support its legal conclusions, and the parties have offered us no legal basis on why we should not rely on the case, we are of the opinion that we have not abridged the dictates of R.C. 2503.20 in citing *Great Lakes Distilleries* as legal authority for our holding. Our decision on this point is all the more supported by the fact that the case was hardly inaccessible or difficult to find. The case is cited in Ohio Jurisprudence 3d and other Ohio property law treatises, when discussing R.C. 2329.45 and its lineage. These treatises are available to the public in print and electronic form. *Great Lakes Distilleries* is also readily available and discoverable through Lexis and other online legal research tools. Accordingly, the presumed legislative intent behind the

whole cloth as the cases cited support the position of the court. *See McBain* at 349-350 (when discussing applicability of former R.C. 2329.45 to a party purchaser, the court stated "[t]he rule, that a reversal of the judgment does not affect the title of the purchaser, does not aid the case, because that rule applies only to a purchase by a stranger."). Although in her motion for reconsideration Hicks distinguishes *McBain* on grounds that it involved the reversal of a confirmation of sale rather than the reversal of the judgment in foreclosure, the court's statements with regard to R.C. 2329.45 are quite clear — the statute does not apply to party purchasers. Moreover, the court discusses the distinction between a reversal of a judgment in foreclosure and the confirmation order, by stating that "the former goes to the general authority of the officer to make a sale, while the latter is the evidence of the fact that the particular sale was legally made." *Id.* The court went on to conclude that even if the purchaser had not been a plaintiff, that reversal of the confirmation of sale nullifies the order so that, legally speaking, no title has passed to the purchaser through the deed. *Id.* at 349. It is therefore reasonable to draw the conclusion, as this court did in 1939, that if a party purchases the property, and the judgment in foreclosure is reversed (which is the order that confers authority upon the sheriff to make the sale, *see McBain* at 349) then it follows that there is no authority to

---

enactment of the statute, which is to ensure that participants have access to relevant cases, also was not abridged in this instance.

Additionally, more recent decisions from other districts have also interpreted R.C. 2329.45 as protecting the title of a third-party purchaser. *See, e.g., Bankers Trust Co. of Cal., N.A. v. Tutin*, 9th Dist. Summit No. 24329, 2009-Ohio-1333, ¶ 15.

sell the property or transfer the deed. In such cases, everything that comes after the foreclosure judgment, is a nullity. *Accord Great Lakes Distilleries*.

{¶17} Nearly two decades after its decision in *McBain,* 15 Ohio St. 337, the Ohio Supreme Court again confirmed its position that former R.C. 2503.45 does not apply to party purchasers, when it stated:

> In a case of a sale of property to a stranger, a subsequent reversal of the judgment does not divest the purchaser's title. Rev. Stat. § 5409. But this statutory rule, which applies only to purchases by strangers, when the judgment is reversed, does not apply to a mortgagee who is a party, nor where the order of sale or confirmation is reversed. In such cases, the rule is as stated in McBain's case.

*Sampson,* 38 Ohio St. 672, 676. Not surprisingly, *Sampson* is also cited by the court in *Great Lakes Distilleries*.

{¶18} Regardless of the clear support found in *McBain* and *Sampson*, Hicks would have this court focus exclusively on the third case cited in *Great Lakes Distilleries,* 8th Dist. Cuyahoga No. 16905, 1939 Ohio Misc. LEXIS 1169; *Hubbell,* 8 OHIO 120. In her reconsideration motion, Hicks argues that *Hubbell* does not stand for the proposition that R.C. 2329.45 applies only to third-party purchasers, but shows that the court looks to the equities of the case and each parties' relative culpability in the action, before determining whether title remains with the purchaser and the restitution remedy applies. We agree with Hicks's interpretation of *Hubbell*. However, in doing so, we must point out that Hicks ignores *Hubbell's* ultimate disposition which is that the court found former R.C. 2329.45 did not apply to protect the party purchaser's title in that case, and that the *Hubbell* opinion was issued approximately 30 years before *McBain*, and 50 years before

*Sampson*. Although, *McBain* and *Sampson* did not explicitly overrule *Hubbell*, they clearly state that R.C. 2329.45 does not apply to party purchasers. It may be that *McBain* and *Sampson* implicitly overruled *Hubbell*, or it may be that the earlier case simply established some of the basic principals surrounding the statute and *McBain* and *Sampson* expounded upon those principles.[6] Either way, we find that the later-in-time cases support the conclusion of this court in *Great Lakes Distilleries* and should control the outcome of this case.

{¶19} Accordingly, we find that the court erred as a matter of law by not vacating the foreclosure sale and by ordering Fannie Mae to pay Hicks $110,000 in restitution. This court's reversal of the foreclosure order served to nullify the foreclosure sale and confirmation order. *See Great Lakes Distilleries,* 8th Dist. Cuyahoga No. 16905, 1939 Ohio Misc. LEXIS 1169, at 5. Consequently, we reverse the trial court's order of restitution and the denial of Fannie Mae's Civ.R. 60(B) motion. On remand, the trial court is instructed to vacate the confirmation of sale, order the deed to the property be returned to Hicks, and enter judgment in favor of Hicks on the foreclosure action, pursuant to this court's order in *Hicks,* 2015-Ohio-1955, 35 N.E.3d 37.

---

[6] Indeed the principles established in *Hubbell* may still be important upon the reversal of a judgment in foreclosure when there is a party purchaser, but the intervening rights of third-parties would be hurt by the inapplicability of R.C. 2329.45 and the divestment of the purchaser's title. *See, e.g., McBride & Murphy v. Longworth*, 14 Ohio St.349 (1863) at paragraph one of the syllabus. It should also be noted however, that the *Longworth* decision interprets the holding in *Hubbell* as follows: "[t]he court held in [*Hubbell*] that the mortgagee was to be regarded as a party merely, and not as a *purchaser* within the meaning of the statute." *Id.* at 351.

**{¶20}** Judgment reversed and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MELODY J. STEWART, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY J. BOYLE, J., CONCUR