IIosea, J.
The motion for non-suit in this case presents to the court one of those very disagreeable duties which the court would very gladly shun.
It is particularly so in a case of this kind, where the distressing effects are so apparent on one side, and where a very large *282 amount is at stake on the other. Whichever way the court may decide, it brings on the one side or the other a resentment. The difficulties of the situation of course can not be understood, because the ordinary person can not realize the difference which must necessarily exist between the duties of the judge as a judge acting in perfectly cold blood and the sympathies of the man that naturally go out to the injured party.
Nevertheless, distressing as such duty frequently is, the demands of conscience require that the matter shall be examined and dealt with upon the hard legal rules laid down for our guidance bjr higher authority; and, beyond that, it is a most disagreeable and perplexing task to analyze the testimony with a view to the responsibilities of decision. The time is necessarily short, and the judge is compelled to do that which, under the circumstances, he would like to take plenty of time to reflect upon. Fortunately for the parties concerned the higher courts are open to review any such action, and to have it set aside and made right if it should be wrong.
I have gone over all the testimony in the case from my notes and the notes of testimony handed to me, starting with a totally different view and intention from that which I was compelled to reach under the convictions of duty. I would rather have the responsibility left to twelve men than undertake that responsibility myself, and yet one must act according to the demand of conscience.
The petition in this case charges the defendant with negligence :
1. In using wood alcohol in varnish supplied to the plaintiff, which wood alcohol was a volatile and poisonous liquid, and the effect of which was to paralyze the nerves and particularly those of the eyes, and that the defendant, with knowledge of these facts, failed to warn the plaintiff.
2. In failing to provide a helmet or a mask which is alleged to be in common and general use among brewers and which it is alleged is practically the only way to protect men, and this was known to defendant and unknown to plaintiff; or to furnish him with any other appliance or means to avoid the harmful and dangerous consequences.
*283 To sustain the issue plaintiff must establish by proof:
1. The fact of the injury and the physical cause producing it.
. 2. That such cause was not a risk assumed by the plaintiff as the servant — using the terms “master” and “servant” as used in the law, meaning employer and employe — but that it was the duty of the master to protect him.
3. That the master failed to protect him and that this failure produced the injury.
■In the brief time allowed for review it is necessary to generalize, and it is not possible to particularize to any extent, excepting as to the injury and its cause. The fact that plaintiff is blind from atrophy of the optic nerve is shown by medical examination. The proof offered to show a particular cause includes : (1) The fact of the use of varnish composed of one-third grain alcohol, two-thirds Columbian spirits and shellac dissolved therein. (2) The fact of varnishing in a heated cask with limited means of ventilation, but according to customary methods of the business. (3) The opinions of medical experts upon a hypothetical basis of fact as to the probability of the injury being-due to inhalation of wood alcohol or Columbian spirits, notwithstanding the use of the moistened sponge over the mouth and nose.
The logical connection between the injury and the cause assigned is the first vital link in the chain of proof, and in the present case it is sought to be shown, and it can be shown, only as an inference or probable cause based upon established facts. On this point our Supreme Court of the state has spoken.
In L. S. & M. S. Ry. v. Andrews, 58 Ohio St., 427, 429, the allegation of negligence was based on the theory that the deceased, a brakeman, was struck by a projecting bridge timber, while performing a duty. The only evidence was certain marks on the timber. The court say:
“No other evidence in the case suggests the manner of his death except the marks on the easing. Certainly an allegation of fact may be established by circumstantial evidence, but the circumstances, to have that effect, must be such as to make the fact alleged appear more probable than any other. The fact in issue must be the most natural inference from the facts proved.”
*284 The court reverses the verdict and judgment below upon its own view of the evidence, which, it says “not only fails to make it appear that Borton’s death occurred in the manner alleged, but since the ppint on which his head struck the casing was certainly not more * * “ than two feet from the level of the platform upon which he was standing when last seen, the natural inference is ,that he fell from the train,” and “a verdict for defendant should have been directed as requested.”
In Cleveland, T. & V. Ry. v. Marsh, 63 Ohio St., 236, 250, it is said:
“Negligence * * * must be proved by testimony directly establishing the fact, or by proof of facts from which such negligence. will reasonably follow and be presumed. The jury can not be allowed to guess that there was negligence without some proof thereof, either direct or inferential.”
In Cleveland City Ry. v. Osborn, 66 Ohio St., 45, 48, the jury found that plaintiff was thrown from a car by sudden stoppage due to collision, and the court find that there was no testimony that this stoppage was due to negligence of defendant and say:
“The jury was not authorized to infer negligence from the proven facts. * * * The injury to the defendant in error, as she puts it before the court, was a pure accident, without the elements of negligence or culpability. It is damnum absque injuria.”
The Supreme Court of the United States in United States v. Ross, 92 U. S., 281, says:
“Not only must the fact from which the inference is drawn be established by evidence, and not rest on the accuracy of a reasoning process, but the inference to which it gives rise should, in the majority of cases, be strong and almost inevitable. No inference of fact be drawn from premises that are uncertain. ’ ’
And adding to this the words of Shearman and Redfield:
“Mere surmise or conjecture on any of these points will not do.” Shearman &'Redfield, Negligence, par. 57; Starkie, Evidence, 80.
There being no connection between the plaintiff’s injury and the cause assumed derivable from common experience or knowl *285 edge, medical testimony is introduced, and by way of qualification so as to be available it is shown that within a few years past it has been put forth as a medical theory, based on experiments made upon animals and a few observations relating to human beings, that wood alcohol introduced into the blood combines with the same to produce formic acid, which by selective action attacks the optic nerve and causes destruction or atrophy of the same. It is at the same time admitted that these observed facts and theories are of too recent origin to have secured recognition and acceptance in the standard works on medical science; and thus far the only literature on the subject is magazine and newspaper articles, and these constitute the sources of information of the expert witnesses, who admit having done no experimental or laboratory work of their own. The consensus shows that .all the witnesses derive their information almost exclusively from the investigations of one man who has made toxic experiments on animals to determine the effects of wood alcohol poisoning. His results are not shown to be confirmed by other independent experiments, so that practically all the knowledge shown is based on this one man’s opinions.
One of the witnesses candidly declined to express an opinion on the basis of the hypothetical question, and all tell us that.the cases on the subject are extremely rare. Upon the unsatisfactory basis of these qualifications the witnesses are asked a hypothetical question, embodying references to the conditions under which plaintiff worked and an assumed composition of varnish consisting of Columbian spirits and shellac, omitting, if my memory serves, all references to the grain alcohol contained in the varnish. The rule of law is, that the purpose of expert testimony is not to substitute opinions for the judgment of the jury, but to throw light on the facts proved, so that the jury may be assisted in judging of the effect of such facts. Mieritz v. Insurance Co., 8 N. P., 422; Kittredge v. Armstrong, 28 Bull., 249.
It is especially important, therefore, in a case where a jury may be supposed to have no knowledge to guide them in a given matter,- (1) that the exact facts be given them, and, (2) that qualifications of witnesses to render opinions be co-extensive *286 with the facts and based on the established knowledge derived from standard authorities and personal investigation.
In this case facts were both given and omitted in the hypothetical question which were vital, as to which and the importance of which these witnesses were not shown to be qualified to speak.
The fagt of the presence of ethyl or grain alcohol combined with methyl or wood alcohol in the varnish was not given them. The fact that a moistened sponge was used was a fact, as to the effect of which, so far as appears, they had no experience and were not qualified to base an opinion.
“A medical or other professional witness can not be allowed to give opinions outside of his art or profession.” Moore v. State, 17 Ohio St., 521, 525.
The pathological symptoms given by these witnesses are obviously, and within the experience of every one, those common to a disordered stomach, relating to the symptoms of headache, stomachache, nausea and vomiting, and it would seem that the natural and probable inference to be drawn therefrom would lead a physician to investigate the contents of the stomach to find a direct cause, before assuming a secondary cause claimed to act only on the blood through the lungs, and affect a remote nerve on ,an unexplained theory of selective affinity.
In a word the expert testimony entirely fails to distinguish or explain the bearing of a theory of causation based upon effects of a liquid taken into the stomach and acting upon and through one set of organs upon the assumed fact of similar action when inhaled into the lungs and acting through another set of organs. Again the suddenness of the blindness is assumed to indicate its origin; yet it is admitted that sudden blindness may and-does occur from other and perhaps unexplained causes — as in the ease of Mr. Morrill*-^-and the common experience of men show this to be true'.
The examination and cross-examination of these physicians was, it must be frankly said, inadequate, unjust to them, and *287 left practically no proper basis upon which to present opinions applicable to this ease.
Upon reviewing this testimony I am satisfied still more fully than during the hearing that the 'objections offered of record to this testimony were well taken; and giving effect to these objections withdraws the opinions called for, and leaves no legal basis upon which the jury would be justified in drawing a legal inference as to the cause of plaintiff’s blindness. In the nature of things any inference here deduced must be mere surmise or conjecture. The total absence of proof that there was formic acid in the blood or urine — the only determinative fact ascertainable by expert knowledge; and the total absence of proof of the contents of the stomach in connection with the pathological symptoms; and the total absence of any physical history of the man’s life, or any facts that might suggest the elimination of other possible causes that might be said to fall within the range of general experience, or even within the range of medical experience — svich as the effect of electric or other light used in the work, at short range, the effect óf -overheating, of carbonic acid, working under ground for many years in partial and sometimes total darkness, and encountering sudden changes from light to dark and vice versa, sudden and great changes of temperature — all of these, and others inferentially suggested by the testimony in the case, clearly show that there is no basis existing in the testimony for'anything more than a mere surmise or conjecture, and no sufficient basis is laid for a necessary or even probable inference.
Birt passing this, let us consider the questions of assumed risk and the master’s duty.
The evidence shows that the plaintiff before entering defendant’s employment had been similarly employed for nine or ten years, and was in defendant’s employ for at least five years. During all this time the process of varnishing casks was the same. For the five years spent in defendant’s employ, Columbian spirit varnish was alone used. The methods of work and appliances used have been common in the art for a long period. It is argued that the fact that a sponge was provided and other precautions observed, is' proof that the *288 defendant recognized it as a dangerous employment. That is true. The consensus of testimony of brewmasters from various breweries shows what these dangers were: (1) Danger of explosion from fumes of alcohol; (2) dangers of suffocation from carbonic acid gas resulting from the combustion of charcoal; and (3) dangers from the fumes of the varnish — and that the varnishers all understood this. The fact that sponges and masks were furnished,and open light prohibited, was notice to them, of these dangers. Two things are obviously clear from the testimony: (1) That plaintiff was experienced in the business in which he was employed; and (2) all .those risks were within the class of assumed risks. Plaintiff is conclusively presumed, under the law, to have appreciated the dangers arising from any defect or deficiency in the appliances or place of working, with respect to these risks, because he had knowledge of them. Pennsylvania Co. v. McCurdy, 66 Ohio St., 118.
But it is claimed that the particular risk or injury to the optic nerve was entirely beyond his knowledge, and therefore not assumed.
This contention, to be available as a ground for recovery, puts upon plaintiff the burden of proving his own ignorance and the master’s knowledge. The master is not an insurer of the safety of the servant. The law is, that it is as much the duty of the servant to look out for his own safety in regard to dangers incident to the work as for the master to protect him. Snyder v. Railway, 60 Ohio St., 494.
But it is also settled law that the dirty of the master in furnishing safe appliances is reasonable care only, and that the servant assumes all risks of latent defects of which the master was ignorant, unless the master was negligent in not discovering the same. It must also be remembered that negligence, or knowledge as an element of negligence, is not to be inferred because there was a defect and an accident consequent upon it. Stewart v. Bridge Co., 15 C. C., 601.
There is here no evidence tending to show that any officer or responsible agent of the company, whose knowledge would be its knowledge, knew of the defect.
*289 The charge in the pleadings is, that the defendant knew that the varnish contained wood alcohol, which paralyzes and destroys the nerves of the system, particularly the eyes, and failed to warn the plaintiff; and that the common usage and general practice among brewers is to use a protecting helmet which protects the eyes and is practically the only way to protect them; and that this appliance was known to defendant and was unknown to plaintiff, and that defendant failed to furnish the_ plaintiff with this or other means to avoid the harmful and disastrous consequences.
The proof shows that the varnish used had been bought of a reputable dealer who sold to all the brewers in Cincinnati except three, and was bought as, and considered to be, the best varnish. The defendant supposed it to be made of grain alcohol .and in fact it was so made in part — one-third. There is no evidence to show that the defendant knew that the varnish thus composed had any deleterious effects, or that these fumes were poisonous. The president and secretary were put on the stand by plaintiff and entered their denial, and there is no countervailing evidence. It is known that no accident of any kind had ever happened in their business experience, or that their attention was ever drawn to it in any way, and that they knew nothing about the helmets or masks.
As to the appliances for protection against fumes, it is shown that for very many years the moistened sponge had been generally used. The Bellevue brewery, using the same varnish as in this case (the Hollstegge varnish), used the sponge until 1903, when they procured the masks; Foss-Schneider use the Hollstegge varnish and sponge; Jackson brewery use Hollstegge varnish, and both sponges and masks — some -men preferring one and some the other; Lackman brewery use Hollstegge varnish, and both sponges and masks; Moerlein brewery used sponges until they recently got masks; John Ilauck brewery use neither sponges nor masks. These brewmasters testify to the dangers commonly known to varnishers, namely: fumes producing giddiness and danger of explosion, and the fumes of charcoal producing drowsiness or depression, etc.
*290 The common consensus of testimony is, that no accident indicating injury to the optic nerve had ever come to their knowledge in connection with this work.
Now, as to the obligation of the master, the Supreme Court of Ohio has very recentlj^stated it as an elementary rule that, “The degree of care to be exercised is determined by the danger to be apprehended.” Weaver v. Railway, 76 Ohio St., —.
Applying this elementary rule to the obligations of the master to furnish safe appliances, how can it be said that he has failed in his duty, having furnished an appliance always and generally used in the business as a protection against known dangers, because of a latent danger about which neither he nor his employe directly concerned in the work, nor any of those in his vicinity engaged in the same business, knew anything?
But it is urged — and the unsupported opinion of one doctor is to this effect — that the sponge is a defective appliance because it takes up the fumes and becomes foul; but if this is true who would first discover it? Whose opportunities of knowledge are best, the man who is concerned with the general operations of the business, or the man who actually uses the appliance ? And if the plaintiff did discover this defect, his duty was to at once notify the master; and failing to do so he assumes'the risk. But in fact the testimony tends to show the efficiency of the appliance.
But again, inasmuch as the servant is bound to exercise reasonable care for his own safety, if the sponge became foul with the fumes it was provided to take up, what was there to prevent cleaning and remoistening it as often as might be necessary to preserve it in proper condition to do its work?
Ordinary care would have suggested this. To say that a workman of years of experience in a given line of work of this character does not know those things, and should not be expected to know them, is not tenable. A workman experienced in any line of work ought to Imow every fact which he would know if he exercised ordinary care to keep himself informed as to matters concerning which it is his (jluty to inquire in the employment in which lie is engaged. . Wellston Coal Co. v. Smith, 65 Ohio St., 70.
*291 Our Supreme Court has in recent cases declared the law upon these points. In the Cincinnati Gas & Elec. Co. v. Johnston, 76 Ohio St., —, it is said:
V ‘The servant can have no relief against his master for injuries resulting from known and obvious dangers, avoidable by ordinary care, * * * together with all such as happen where there is no fault on the part of the master.’ # * * At the time he (Johnston) was injured, he was engaged in precisely the same character of work he had been performing daily for at least five years. * * And there is no evidence even tending to show that the injury he received resulted from any incapacity on his part to understand the character and requirements of the work in which he was then engaged. * * * In fact, it does not appear from the record that there was any fact, circumstance or' condition within the knowledge of the company that was not clearly known to and understood by Johnston. # ® >s And the trial court at the close of the evidence, when so requested, should have instructed the jury to return a verdict for the defendant. ’ ’
In Weaver v. Railway, 76 Ohio St., —, the Supreme Court, in sustaining the reversal of verdict and judgment of the trial court for error in the charge on the subject of increased care' due from railways who create obstructions to sight of the track at a crossing, say that said charge—
“Would leave no place for accidents or such fortuitous happenings as may result'from causes that would not be observed by ordinary care exercised by either or both the parties, and which ordinary prudence would not anticipate. Such a rule, if recognized and enforced, * * * would be an inexpensive and effective substitute for a policy of insurance against accidents. ’ ’
I can find no testimony in the case tending to show a failure to exercise ordinary care on the part of the master, under the rules of law, in respect of the appliance furnished. It is not sufficient to show that there were better or safer appliances to be had. The master is not required under Ohio law to furnish absolutely safe appliances, nor to insure their perfect condition. Ilis duty is performed when he furnishes such appliances as are in general use in the same business. Toledo & O. C. Ry. v. *292 Beard, 20 C. C., 681 (affirmed, Beard v. Railway, 59 Ohio St., 615); Railway v. Henly, 48 Ohio St., 612; Railway v. Bauer, 50 Ohio St., 562.
Again, it is stated:
"It is not negligence for a master to .command the servant to go on with his duty in a manner which is the general custom in such work, and of which the servant had notice and had done in the same manner before withoixt injury, unless a peculiar danger arises which is communicated by the servant to the master and a demand made for the proper precautions to be made for safety.
"Where the master has furnished a competent foreman, who is conducting the business in the fair exercise of a capable judgment, and a question arises of opinion merely, the master is not responsible for a simple error of judgment.” M. & C. Packel Co. v. Britton, 1 C. C.—N. S., 33.
Again, if a plaintiff was engaged at the time in the performance of his usual and ordinary duties, which he had been engaged in for several years for the master and no special or peremptory orders or instructions were given to the servant, and he was injured in the discharge of an ordinary duty which had in it certain elements of danger which he assumed while he was so engaged, he can not recover. Cleveland v. Wolf, 2 C. C.—N. S., 126.
Ill this case the plaintiff was engaged in the ordinary work. He was not expected to inhale the fumes, which are a necessary incident of the business, but was furnished with the usual means of protection always.and still used generally in the business. His means of knowing the dangers and any defects were equal to the master’s, if any were observable. It can not be maintained and is not attempted to be shown that the fumes of methyl alcohol are any more volatile than those of ethyl alcohol, or that the sponge if it arrests one will not arrest the other. The object and intention of the effect of the sponge was to arrest these fumes and prevent their being inhaled; and the plaintiff must in law be presumed to know this. If it failed to do so when properly used and kept in proper order, he must have known it; and if he did know it and failed to notify the defendant, the *293 fault was his. In all such cases the practical working of such a device can only be known to the master through those who use it in the business.
Strieker & Johnson, for plaintiff.
Robertson & Buchwalter, for the defendants.
. And it can not be said as a matter of law or fact that a knowledge of the deleterious effects of wood alcohol taken into the stomach, in the form of essences or otherwise, would imply knowledge that it is the same if inhaled as the fumes of varnish. Neither can it be said as a matter of law that a manufacturer is chargeable with the knowledge of a latent danger in a material he uses, not known or brought to his knowledge through the practical workings of his business, but appearing in chance articles published in newspapers or magazines, either as advertisements of a protective device or otherwise, and not proved to have been read by him. Such testimony falls under the rule of exclusion known as res inter alios acta.
So, after working as I have, reviewing all this testimony carefully and undisturbed by other things, which practically has occupied every moment of the time since we left yesterday, except three hours devoted to sleep, etc., I am forced to the conclusion that the issues in this case considered separately or together, individually or collectively, are not supported by testimony sufficient to support a verdict, if one were rendered. That being true, I am obliged to hold that this motion is well -taken and must be granted.
As I stated in the beginning, it is a hard task to separate the feelings of a man from the duties of the judge. I sympathize most deeply, as I think every one must, with the unfortunate condition of the plaintiff in this- case, and would gladly, if I could conscientiously see my way to any other conclusion, have reached it. I started into this independent examination determined to find a way to put this responsibility on the jury and not take it on myself, but it is in the blood, I suppose, to follow the dictates of conscience regardless of all other considerations.
The motion will be granted.

Referring to Henry A. Morrill, ail old and prominent member 'of the Cincinnati bar, who became suddenly blind, supposedly from overwork in his profession.