Birchard, C. J.
The complainant presents for our consideration a question of very considerable importance, if not one entirely new in this Court. As a mortgagee, he has no claim prior to the liens of the judgments, upon which this land has been sold. This results from the provisions of the act relating to the recording of mortgages, under the construction it has repeatedly received by this Court. See Stansell v. Roberts, 13 Ohio Rep. 148.
Aware of this difficulty, his learned counsel • have rested his case upon the broad, equitable doctrine, that the property of one man ought not to be taken from him in satisfaction of another’s debt, without just compensation. This case is therefore *520 presented as that of á vendor, having parted with the legal ti-relyin§ uPon his lien upon the land sold for payment. It certainly a strong case of apparent equity.. The naked inquiry is, did he forfeit this equity by his ineffectual attempt to secure it, by way of a mortgage ? This is the great question to bp decided. It is thus stated by respondent’s counsel: “Does a mortgage upon the estate sold, taken by the vendor to secure the payment of the purchase money, extinguish his prior equitable lien ? ” They say this is a new question in Ohio; and so far as I know, it has never before been presented, or if so, never understood to have been presented before a full Court for decision. It has been intimated that it would have been better for the people of the Stale, had the Court, at an early day, held that no such lien as the secret lien of the vendor existed in Ohio. It is not for us to say which would have been the better policy. Our Courts, and our people, have for a long time recognized the existence of this species of equitable lien, contracts innumerable have beep made in reference to it, and to deny the existence of the rule which recognizes it, at this day, would produce mischief scarcely distinguishable, in consequences and principle, from a legislative act impairing the obligation of contracts. For my own part, I cannot well see how that provision of the constitution which prohibits the violation of contracts, is less obligatory upon Courts than upon legislators. Hence the great danger of unsettling by adjudication — which always has a retroactive operation, a long settled rule, which has been so incorporated into the judicial system, as to become a rule of property. Such is the character of the rule recognizing the' vendor’s lien. It must exist, as to past transactions. If the policy is vicious, the Legislature can change it, and provide for the future. That the lien exists in Ohio, under certain circumstances, is as well established as any other principle of law; Tiernan v. Beam, 2 Ohio Rep. 383. When it obtains, the vendee is treated as a trustee to the vendor, for.so much of the purchase money as remains unpaid; and the lien is binding upon, the vendee, his heirs, and others, acquiring title, with notice of the equity.
*521 Prima facia, it exists without a special agreement. But what facts and circumstances are sufficient to defeat or overcome the apparent equity of the vendor, has often been question of doubt and difficulty; and the older decisions are not all, on some points, entirely reconcilable. There are also some nice shades of difference in the more modern decisions. However, it is now regarded as well settled, that the equity of the vendor cannot be set up against a bona fide purchaser, without notice. Also, that the taking of collateral security, either personal or by way of mortgage, is a waiver which extinguishes the lien ; and that a mortgage for a part of the purchase money, on the same property, is a waiver of the lien for the residue. Brown v. Gilman, 4 Wheat. 290; 1 Mason, 212; Cole v. Scott, 2 Wash. Rep. 141.
In Mackreth v. Symmons, 15 Vesey, 350, nearly all the English cases are reviewed by Lord Eldon. In 4 Wheat, and 1 Mason, the doctrine is examined at length by the Supreme Court of the United States. In Fish v. Howland, 1 Paige Ch. 20, both the English and American cases are examined by the Chancellor of New York. In the latter case the learned Chancellor expresses the opinion that the safer rule “ is to consider the lien as waived whenever any security is taken on the land, or otherwise, for the whole or any part of the purchase money, unless there is an express agreement that the equitable lien on the land shall be retained,” and in the same opinion he recognizes the principle first stated in Bondv. Kent, 2 Vernon, 281, and sanctioned by Chief Justice Marshall, in Brown v. Gilman, “ that where by agreement there is an express lien upon the estate for a part of the consideration of the conveyance, it excludes the idea of an implied lien for the residue. The principle deducible from Mackreth v. Symmons, is clearly “ that a mortgage taken upon the estate is not of itself a waiver of the lien, but that when so taken as to evince the intention that the estate was always relied on as a security for the purchase money, the lien subsists, and if necessary, may be pursued. With this *522 the principle sanctioned by the Supreme Court of the United t jn 4 Wheat., may be reconciled. For a mortgage taken a part of the premises only, to secure the purchase money, necessarily raises a violent presumption that the parties intended the residue of the, estate should pass free and unincumbered. This reasoning admits of no implication that if necessary, the lien would not have been recognized in aid of the mortgage, so far as that embraced the vended property. The spirit of the rule being this “that the lien still subsisted when the obvious intention in taking the mortgage is to rely upon the estate sold solely as security.” We cannot conceive upon what principle an act done with such an object, can be held in equity a waiver or destruction of the lien. At law, it might merge the implied equity in a higher security. This seems to be the ground of decision in the case referred to in 2 Leigh’s Reports, decided by the Court of Appeals in Virginia.
There is no reason for this application of the doctrine of merger in equity. A merger does not extinguish a claim ; its equity still subsists and is united with the higher security ; and whenever it becomes necessary to resort to it for the purpose of justice between man and man, a majority of the Court think there is no violation of principle nor any direct conflict with authority, in permitting it to be done in a Court of equity.
The quotation from Paige, taken in the sense which we suppose it might have been intended, is not very objectionable, and would not be an authority for rejecting this lien, for here the avowed object in taking the mortgage was to preserve the lien upon the estate itself. If, however, as counsel contend, the Chancellor’s intention was to hold that the taking of a mortgage to secure the purchase money, no other security being relied on than the property sold, is either a merger, waiver or substitution, or other destruction of the lien, we think it is not right to follow him, and that Sir Wm. Grant, Lord Redesdale, and Lord Eldon, are safer guides.
But aside from all authority, what is there in the effort to secure an absolute binding lien upon the property itself, the *523 whole property sold, which should in: conscience be held todestroy the vendor’s equity ? The act of taking a mortgage ceives and defrauds no one. It raises no inference and izes none, that the party did not rely upon the property as his security for the purchase money, and if- there is any foundation in any case for the equitable doctrine, that a man’s land shall not be taken from' him till he has received pay for it, by one who has knowledge of the facts, that foundation still remains, notwithstanding a mortgage be taken. As I have said before, the doctrine that the implied lien becomes merged in the higher security, has its force in those cases where it is applicable, in Courts of Common law. It is not a creature of equity. Indeed equity should restrain the principle, and prevent its application, where attempted to be used as an instrument of injustice. The legal doctrine of merger ought never on the equity side of this Court’to be permitted to work the destruction of a well established equity, unless the authorities require it. -There is no adjudicated case that I know of which requires it save the one in Leigh referred to above. I am aware that numerous obiter dicta may be found to sustain the notion that .an attempt to secure the vendor’s lien by a mortgage on the estate sold, is a discharge of the lien itself, yet I have never seen, nor do I ever expect to see a well, considered case expressly ■deciding that naked point. It seems impossible that such a decision can be based on solid grounds.
A mortgage taken as this was is not a substitution. That term implies a contract by which the parties agreed to take -other property, or other security, and discharge the lien upon the land, leaving the vended estate in -the hands of the purchaser unincumbered, subject to alienation. Nor is,it a waiver.
By waiver is meant an act done showing impliedly or expressly that the party agreed to rely on some security other than the estate for the purchase money, or without any security to rely upon the personal responsibility of the vendee alone.
Again, as this land has been sold, it is urged there can be no relief, because if the vendor’s lien exists at all it is a lien *524 upon the land and not upon the purchase money, while the bill seeks the purchase money only;
In answer to this it is only necessary to look at the general equity of the parties and the state óf the facts. The land it is true has been levied upon and sold upon the execution, yet the sale is not confirmed nor the money paid into the hands of the judgment creditors. It is yet in the custody of the Court, where it is held for the use of the one having the better claim. The vendee,. creditors and purchaser are in Court. None of them have any desire that the sale should be set aside. They, together with complainant, wish it confirmed. Why should the Court refuse then to do what equity requires, and secure to complainant the benefit of his lien in this form, and to the creditors the surplus ? Certainly he came not too late to preserve his equitable rights, because he came before confirmation and in time to prevent it if necessary; in time also to prevent the bidder at sheriff sale from placing himself in the condition of purchaser without notice. Before a confirmation he might interfere, after that it would perhaps have been- too late.
This brings me to the consideration of another point which has been suggested. That is, that the complainant is too soon in Court. True, this objection is not very directly put forward, yet it is proper that it should be noticed. If I understand the meaning by which it is sustained, it is in this wise: complain-: ant’s claim is not due, and until due he has no right-in Court, and cannot know that any necessity for a resort to this fund will ever arise. Besides he has the personal security of Martin for the money due, so that in effect, this proceeding is for Martin’s benefit. ■
As to the first of these objections, for they should be considered as two, and disposed of separately, it is admitted the purchase money is not due, and that when due, it may be paid without a resort to this land, or the fund which it has'produced. But is that any reason why complainant should lie still and see his securities swept away, by being placed in the hands of one who may vest the title in a purchaser without notice? He ei *525 ther has or has not a lien upon the land. If he has such lien, it is clearly his right to protect it. No one can compel him to part with it against his will, nor should he be turned out Court when it is put in jeopardy,' and will be lost, [or the loss hazarded, irretrievably, without the aid of the Court.
Then as to the personal security of Martin, does the objection amount to any thing ? The land was sold to both, and both Martin and Ewing by the showing of the bill, are liable for the purchase money. This in no wise affected the vendor’s lien. It existed in no less force than it would if the sale had been made to a single person, and even if the retention and preservation of the lien by Boos, should in the end result to the benefit of Martin, that fact furnishes no reason why Boos shall be forced to part with it. It is not for this Court, but for the party himself, to elect when and under what circumstances he will yield up a security for the payment of his debt which he lawfully possesses.

Decree for Complainant.

N. B. A motion for rehearing was made and overruled.