Williams, J.
The cause was submitted to the trial court upon admitted facts and uneonflieting evidence which show that Robert Carter, Sr., died in 1865, seized of a tract of land situated in Richland county, containing nearly six hundred acres, which he devised by will to his nine children, all of whom were then living, “to be divided equally between them.” These children, on the second day of April, 1869, made amicable partition of the land by the inter-change of deeds of release, by which the sixty acres in controversy in this case were set off in severalty to the testator’s daughter, Martha Carter, as her equal share, and she relinquished her interest in like shares to each of the other children. Martha was married to Marcus Day in 1866, and died in 1887, intestate and without issue, seized of her tract of sixty acres. Her husband survived her, and in 1890, conveyed the land to his children by a former marriage, and died in 1892. His grantees are the plaintiffs in the action below; and their claim is that, on the death of his wife Martha, he took by inheritance from her an estate in fee simple to the eight-ninths of the land so held by her under the partition, which estate, by his conveyance, became vested in them. The defendants in the action are the surviving brothers and sisters of Martha, and the representatives of those now deceased; and it *101 is their claim that the whole of the land of which she died seized descended to them, subject only to-a life estate of her husband therein. Which one of these conflicting claims must prevail depends upon the nature of the title by which Martha held the land at the tine of her decease, and that depends upon the effect of the partition. If she thereby acquired a new title to eight-ninths of the land, that interest passed to the surviving husband in fee simple under section 4159, of the Revised Statutes, and was conveyed by his deed to the plaintiffs below. On the other hand, if, notwithstanding the partition, she continued seized of her title as devisee, then its descent is controlled by section 4158, under which the husband took an estate for life only, and, on his death, it went to her brothers and sisters and their representatives, the plaintiffs in error.
A partition of land by action, the authorities' maintain, creates no new title to the shares set off to the parceners in severalty. While its effect is to locate the share of each in his allotted parcel of the land, and extinguish his interest in all the others, the title by which he holds his divided share is the same as that by which his undivided interest in the estate in common was held. Tabler v. Wiseman, 2 Ohio St., 208; McBain v. McBain, 15 Ohio St., 337. The effect upon the title is different where, in such proceeding, it is found impracticable to divide the land among the tenants in common and there is an election by one or more of them to take the land or some parcel of it at the valuation returned by the appraisers. The grounds of the distinction are satisfactorily stated in Freeman v. Allen, 17 Ohio St., 527, and need not be repeated here. , But no satisfactory reason can be assigned why *102 partition by metes and bounds among’ tenants in common, by the interchang’e of mutual releases, where each one receives no more than his proper share of the land, should have any different effect upon the title from that of a like partition under the statute. The former is a convenient and less expensive mode of attaining’ the same result, and the difference is in the method only, and not in the legal consequences. The latter is not less effectual than the former in extinguishing the interest of each parcener in the parcel allotted to the others, and in transferring to each the interest of the others in his parcel. The controlling fact common to both is, that each parcener receives in severalty no greater estate than he before held in common.
With regard to the effect of partition in either mode upon the title, it is said in the case of Freeman v. Allen, supra, that a tenant in common has the right to have his share “located in a distinct part of the premises by proceedings in partition,' or the same thing might be effected by mutual releases. No new title would be acquired in either case, and the estate in the land would remain the same as before. The tenancy in common only would be dissolved and the estate of each thereby become separate.” True, the question we have before us was not involved in that case; but it was directly presented and decided in the case there cited, Orosthwait v. Dixon, 5 Ad. & Ell., 834. In that case one of two parceners aliened his moiety in fee whereby the alienee and the remaining parcener became tenants in common. After-wards by deed of partition between the alienee and the remaining parcener the land was divided by metes and bounds and each took a moiety in *103 severally. The question was whether by that deed the parcener took anything as purchaser so as to break the line of descent. It was held that he did not. Lord Denman, C. J., said; “ It is admitted that, if the deed of partition had been made between the parceners themselves, the descent would not have been broken. Com. Dig., Parcener (c., 15). But it is said that, inasmuch as one of the parties to the deed was a stranger in blood, whatever was taken from him by the parcener must be taken by purchase. And doubtless this would be so if anything was taken from him, but we are of opinion nothing was taken by the parcener from the alienee under the deed. The effect of it was only that the parcener had it by a divided moiety in severalty discharged of any right of the alienee, instead of an undivided moiety in common; but he had the same estate in the land as before.” In Com. Dig., vol. 5, p. 240-1, under the title of Parceners, c. 15, the rules on this subject are stated to be that: “Upon partition made, the occupation and descent, which before were in common, shall be several and distinct,. But a coparcener, after partition, continues in the same privity of estate as before, for it does not convey, or make any alteration in the estate. So parceners shall be in from the common ancestor as before, for the partition does not make any degree.”
The precise question we have here was decided by this court in the unreported case of- Smith v. Carver. In that case Clara Bell Carver, an adopted daughter of Henry Carver, took by descent from him, as tenant in common with his children. Partition was made by mutual releases of land so inherited, and afterward Clara Bell died intestate, without issue, and unmarried. The children of *104 the ancestor survived her, and she left brothers and sisters of the half blood — children of her father, who brought partition, claiming that she took by purchase the land set off to her in severalty by the partition deeds, and that it descended to them. This claim was contested by the children of Henry Carver, who contended the land descended to them as ancestral property. The courts below held that the estate was not changed by the partition from one by descent to an estate by purchase, and therefore, its course of descent was controlled by section 4158, of the Revised Statutes ; and that holding’ was- affirmed by this court. See Smith v. Carver, 36 W. L. B., 189, 55 Ohio St., 642.
If the testator in this case had divided his land into nine parts and by his will given one part to each of his children, the parcel given to Martha would have descended to the plaintiffs in error. Instead of doing that he gave each of his children an equal undivided share in the whole body of his land, leaving the division to be so made among-themselves. This they did by the execution of deeds of release to each other; and we are of opinion that by the partition thus made no new title was acquired, and consequently, the course of descent was not changed.
We have examined the cases of Brower v. Hunt, 18 Ohio St., 312; Hershizer v. Florence, 39 Ohio St., 516; Bank v. Wallace, 45 Ohio St., 168; and other cases cited by counsel for the defendants in error, and find they do not raise the question here under consideration, nor conflict with the conclusion arrived at in this case.
It is urged, however, that the judgment below should nevertheless be affirmed because, if certain *105 incompetent evidence were excluded, the deed to Martha Carter would appear to have been made for a money consideration actually paid, and her estate in the land one acquired by purchase. That deed was introduced and relied on by the plaintiffs below; and against their objection, the defendants put in evidence all of the deeds made to accomplish the partition. Each one recites a pecuniary consideration of the same amount. The defendants also proved that in fact no money was paid, but that the only purpose of the conveyances was to make amicable partition of the land, and each was the sole consideration for the others. As sustaining their contention that the evidence was incompetent counsel for the defendants in error cite and seem to rely largely on the case of Burrage v. Beardsley, 16 Ohio, 438, and other cases of like import. That case holds that, “where a deed purports to be executed for a valuable consideration, and is impeached by proving that no consideration passed, it cannot be sustained by proving that it was executed for natural love and affection.” But this rule, it is said in Steele v. Worthington, 2 Ohio, 182, 187, is applicable only where the deed is impeached for fraud. And it was held in Mitchell v. Ryan, 3 Ohio St., 377, that a deed not impeached for fraud may be shown to be a gift, notwithstanding the consideration expressed in the deed is a pecuniary one. Where the deed is not impeached or attacked, the recital of the consideration has no other effect than as an admission, and like other admissions is open to explanation. Harrison v. Castner, 11 Ohio St., 339; White v. Brocaw, 14 Ohio St., 339. Here the validity of the partition deeds was not attacked by either party; nor was the evidence to which the objection *106 was made designed or calculated to impeach them, aor yet to sustain them, but rather to prove that the real transaction was nothing- more than an amicable partition, and that the recital of a uniform consideration in each deed was adopted as a means of showing that each tenant in common actually received no more than his equal share of the estate. And all of the deeds having been made at the same time, as parts of a single transaction, for the accomplishment of a common purpose, the partition of the land among the parties, their admission in evidence was proper, so that they might be considered and construed together, in the light of the circumstances attending their execution, and according to the intention of all the parties.

Judgment reversed and judgment for the plaintiffs in error.