Minshall, J.
The land in question was devised to Henry Kihlken, now deceased, by his father, and he conveyed it to his brother John in 1888, on a written agreement that it was to be reeonveyed on request. There was no real consideration for the conveyance, but was done for a purpose we will not now consider. Before his death Henry made the request, but died before a reconveyance was made. Thereupon John conveyed the land to Henry’s widow, believing at the time that, under the trust, this was in accordance with his duty. This presents the first aspect of the question arising upon the facts as found. The claim of the plaintiffs below is, that by reason of the fact that the land in question was devised to Henry by his father, and that Henry died without issue, it should descend to them as ancestral property under section 4158, Revised Statutes, notwithstanding the conveyance to John and by John to Henry’s widow. This we think is erroneous. Had John as requested conveyed to Henry just before his death, the immediate title of Henry to the land would have been the deed of John and not the de *118 vise of his father. In Brower v. Hunt, 18 Ohio St., 311, after partition had been made between brothers of land devised to them by their father, two of them, Jacob and Thomas, exchanged the lands each had received in the partition by a reciprocal execution of deeds. There was no other consideration received by either for his conveyance than the land received from the other. The court held that by this exchange the lands lost their ancestral character. The reasoning is stated as follows by White, J.: “The title mentioned in the statute is the title under which the intestate immediately holds. The title to these lands came to Thomas by deed of conveyance from Jacob, and the character of the consideration cannot alter the fact and make that a title by devise from the ancestor which was in fact a title by deed from. Jacob. ” It is true that in partition, though effected by deeds, it is held to be different; because partition acts only on the possession and not on the title. Partition does not change the character of the title. Freeman v. Allen, 17 Ohio St., 527; Carter v. Day, ante. We are unable to see why the reasoning in Brower v. Hunt does not apply with equal force to the case before us. Had the conveyance been made by John to Henry in his lifetime as requested, he would have died seized of them as non-ancestral lands under the deed; for whatever previous equity he had would have been merged in the deed; and the lands would have descended to his wife under section 4159, Revised Statutes, as an absolute estate in fee simple. It is said in Stemble v. Martin, 50 Ohio St. 495, 525: “The descent of real estate is controlled by the legal title; and when the legal and equitable title unite in the same person, the latter becomes merged in the former, and *119 does not descend separately. The legal title draws to it the whole estate, and carries it in the same channel of descent as if the equitable estate had never existed.” So in Patterson v. Lampson, 45 Ohio St., 77, the same principle was applied. There a father desiring to make an advancement to his daughter on the eve of her marriage, purchased a tract of land, paying therefor $6,000, and caused the deed to be made directly to her. On her death without children, the land was held to be non-ancestral; because the immediate title under which she held the land was the deed of the person from, whom her father purchased it. Hence John did not mistake his duty under the trust when he conveyed the lands to Henry’s wife; for it was his duty to convey them, if there was any in the premises, to the person that would have inherited them, had the reconveyance been made to Henry.
There is no room for a question of good faith or fraud on the part of the owner of ancestral lands, in changing their character. He has, during life, the power to dispose of them as he pleases; and it is only where he does not, and dies seized of them without issue, that his brothers and sisters take any estate whatever in them. They simply take in the character of heirs and not otherwise. In Indiana it appears that the surviving wife of a deceased husband inherits one-third of his lands in fee simple, subject to the provision, that if she again intermarries, she cannot, during such marriage, alienate them; and if she dies during such subsequent marriage, the lands go to the children of the husband from whom the lands came. And in Nesbitt v. Trindle, 64 Ind., 183, it was held that a widow could change the heritable character of the lands descended to her from her deceased hus *120 band, by a deed made without consideration to a third person, who after she had remarried, reconveyed to her. She, as the court observed, had the power, before her remarriage, to dispose of the lands as she pleased; and whether she did so for a consideration or not, was immaterial to the rights of her children by the former husband from whom she derived title; for they, as heirs, liad no vested estate in the lands, while she remained a widow.
The second aspect of the question on the plaintiff’s right to recover, arises upon the fact averred in the answer of the defendant, and found by the court to be true, that the deed made by Henry to his brother John in 1888, was made for the fraudulent purpose of hindering and delaying one Catherine Miller in the collection of any judgment she mig'ht recover against him in a contemplated bastardy proceeding; and was accepted by John to assist him in this purpose. This we think is an additional reason why the plaintiffs below are not entitled to recover. It is too well settled in this state to need the citation of many authorities, that neither a grantor nor his heirs, can have any relief in law or equity for the recovery of lands so conveyed. Trimble v. Doty, 16 Ohio St., 119; Robinson v. Robinson, 17 id., 480; Vanzant v. Davis, 6 Ohio St., 52; Barton v. Morris, 15 Ohio, 408, 431; Tempner v. Barton, 18 id., 418, 422. But it is claimed that these cases do not apply here, because it is not shown or found by the court, that the Miller girl had any valid claim against him, or had in fact commenced any proceeding in bastardy. Conceding- that this is a correct construction of the finding, which is doubtful, as the finding is that the conveyance was made to defraud her out of *121 “her just claim,” still it does not help the plaintiffs below. This very question here raised was., disposed of in Fridge v. Andrews, 51 Ohio St., 405. It was there held that “where an owner, during the pendency of a suit against him, and in view of a possible judgment being rendered adversely to him, conveys his property to another with intent to defeat the satisfaction of such judgment as may be recovered against him in the suit, he cannot, after judgment in such suit in his favor, have the aid of a court of equity to compel the grantee to reconvey to him the property. ’ ’ The fact that no suit is pending at the time of the conveyance cannot vary the application of the principle, where it was made to defeat the satisfaction of any claim that might be established against him. The fact of the conveyance having been made, may have dissuaded the girl from commencing any suit, just as was said in Pride v. Andrews, it may have caused the party to abandon his suit, rather than enter upon the task of pursuing the property.
The case of Norton v. Blinn, 39 Ohio St., 145, much relied on, is not in point. There Norton as agent received from Blinn $500 to be invested in margins on wheat. He invested the money and made $395 and refused to account for the principal and what was made, on the ground that the transaction was an illegal one. The agent was required to account, on the ground that “it is contrary to public policy and good morals, to permit employees, agents or servants to seize or retain the property of their principal, although it may be employed in illegal business and under their control.” In the case before us the defendant below was not acting in the capacity of agent for any one. The conveyance was made to and accepted *122 by her, in her own capacity and rig'ht; and not as a trustee, or agent to transmit the title to some one else. If the application here claimed for Norton v. Blinn were admitted, it would result in overruling all the decisions heretofore made, denying any relief to one, making a conveyance to hinder and delay his creditors.
The defendant below, by leave of the court, amended her answer, adding a prayer that her title to the property be quieted. We think she is entitled to the relief asked. Therefore,

Judgment reversed; and judgment for the widow quieting her title.