Summers, J.
The contest is between the legal representatives of brothers of the whole blood and legal representatives of brothers of the half blood of the ancestor from whom the lands descended to an intestate who died unmarried, without issue and leaving no brothers or sisters of the whole or half blood, or their legal representatives, or mother surviving him, over the partitioning of a town lot in Clermont county and 182 acres of land in Brown county.
B. N. Stockton acquired title to the lands by purchase. He died seized of them, and they *228 passed by descent to his only child, Charles Stockton, who never married and died, in June, 1907, • intestate and without issue, leaving no brothers or sisters, either of the whole or the half blood, or their legal representatives, surviving him, and his mother died before him.
At the time of the death of Charles Stockton there were living legal representatives of two brothers of B. N. Stockton, of the whole blood, and legal representatives of two brothers and of two sisters of B. N. Stockton, of the half blood. The court of common pleas partitioned the lands between the leg'al representatives of both the whole and the half blood, and on appeal, the circuit court did the same.
The judgments below were based upon Oliver v. Sanders, 8 Ohio St., 501, where it is held, that in a statute relating to descents of ancestral estates, the half-brothers and sisters of the ancestor are included in the words “brothers and sisters of such ancestor” and are preferred to the brothers and sisters of the intestate, of the half blood, who are not of the blood of the ancestor from whom the estate came. But it is contended that that case is distinguishable from this, that this is not a contest between the half-brothers and sisters of the intestate who are not of the blood of the ancestor from whom the estate came, and the half-brothers and sisters of the ancestor, but between the legal representatives of the brothers of the whole blood of the ancestor and the legal representatives of the brothers and sisters of the half blood of the ancestor; and that since that decision the statute has been supplemented, and that in *229 Stembel et al. v. Martin et al., 50 Ohio St., 495, where the supplemental act is construed, it is held, that brothers and sisters of the whole blood are preferred to brothers and sisters of the half blood, although the words of the statute are “brothers and sisters” without limitation.
The statutes are as follows: Ancestral Estates. Section 4158, Revised Statutes, “When a person dies intestate, having title or right to any real estate or inheritance in this state, which title came to such intestate by descent, devise or deed of gift from an ancestor, such estate shall descend and pass in parcenary to his or her kindred in the following course:
“First. To the children of such intestate or their legal representatives.
“Second. If there are no children nor their legal representatives living, the estate shall pass to and vest in the husband or wife, relict of such intestate, during his or her natural life.
“Third. If such intestate leave no husband or wife, relict of himself or herself, or at the death of such relict, the estate shall pass to and vest in the brothers and sisters of the intestate who are of the blood of the ancestor from whom the estate came, or of their legal r'epresentatives, whether such brothers be of the whole blood or of the half blood of the intestate.
“Fourth. If there are no brothers and sisters of the intestate of the blood of the ancestor from whom the estate came, or their legal representatives, and the estate came by deed of gift from an ancestor who is living, the estate shall ascend to such ancestor.
*230 “Fifth. If the ancestor from whom the estate came is deceased, the estate shall pass to and vest in the children of the ancestor from whom the estate came, or their legal representatives; if there are no children of the ancestor from whom the estate came, or their legal representatives, the estate shall pass to and vest in the husband or wife, relict of such ancestor, if a parent of the decedent, during the life of such relict; and on the death of such husband or wife, the estate shall pass to and vest in the brothers and sisters of such ancestors or their, legal representatives; and for want of such brothers and sisters, or their legal representatives, to the brothers and sisters of the half blood of the intestate, or their legal representatives, though such brothers and sisters are not of the blood of the ancestors from whom the estate came:
“Sixth. If there are no such half-brothers and sisters of the intestate, or their legal representatives, the estate shall pass to the next of kin to the intestate of the blood of the ancestors from whom the estate came, or their legal representatives.”
Nor-arcestral Estates, Section 4159, Revised Statutes. If the estate came not by descent, devise, or deed of gift, it shall descend and pass as follows :
“First. To the children of the intestate and their legal representatives;
“Second. If there are no children, or their legal representatives, the estate shall pass to and be vested in the husband or wife, relict of such intestate;
*231 “Third. If such intestate leaves no husband or wife, relict to himself or herself, the estate shall pass to the brothers and sisters of the intestate of the whole blood, and' their legal representatives;
“Fourth. If there are no brothers or sisters of the intestate of the whole blood, or their legal representatives, the estate shall pass to the brothers and sisters of the half blood, and their legal representatives ;
“Fifth. If there are no brothers or sisters of the intestate of the half blood, or their legal representatives, the estate shall ascend to the father; if the father is dead, then to the mother;
“Sixth. If the father and mother are dead, the estate shall pass to the next of kin, and their legal representatives, to and of the blood of the intestate.”
Section 4160, Revised Statutes, provides when real estate shall pass to hus'band or wife; and when to next of kin of intestate. Section 4161 provides when real estate shall pass to the children of the former husband or wife. Section 4162, Revised Statutes, provides for the descent of an estate which came by a former husband or wife, and Section 4163, Revised Statutes, provides for the distribution of personal estates.
Cliver v. Sanders, supra, does not decide merely that a brother of the half blood of the ancestor is preferred to half-brothers and sisters of the intestate, but also that when, in the statute relating to ancestral estates, the words “brothers and , sisters” are used without qualification they include the half-brothers and half-sisters of the ancestor. The opinion of the learned chief justice is a demonstra *232 tion of the correctness of that conclusion; but for the conclusion that the words included half-brothers and sisters, the half-brother would not have inherited, and the question of preference would have disappeared.
About the only substantial difference between Section 4158, Revised Statutes, and the statute then under consideration is in the addition of the second subdivision, and in the addition of the provision for the husband or wife in the fifth subdivision, which was the fourth subdivision of that act. In the opinion Swan, C. J., says: “Under the decisions above referred to, half-brothers of an ancestor are included in and designated by brothers, wherever that term is used without limitation. We do not perceive anything, in the terms or context of the statute under consideration, to control, or limit this general meaning.
“Half-brothers of the ancestor of the intestate are of the blood of such ancestor, but not of the whole blood. Half-brothers of the intestate may not have one particle of blood of the ancestor of the intestate in their veins. Now, the statute in cases where an estate came by gift, devise, or descent, from an ancestor to an intestate, undertook to provide for the descent of the estate to the relatives of the intestate, and to the relatives of his ancestor, from whom the estate came; and in so doing, had to deal with half-brothers and sisters of the ancestor, and with half-brothers and sisters of the intestate who were, and who were not, of the blood of such ancestor. The general assembly have used the words brothers and sisters, of the whole or the half-blood, more frequently than was *233 necessary to give meaning to their words, in the second subdivision of the section of the law under consideration, inasmuch as the words ‘brothers and sisters of the blood of the ancestor-,’ in that subdivision, would include brothers and sisters of the half-blood. But this was, no doubt, to explain what they meant by the words, ‘brothers and sisters who may be of the blood of the ancestor;’ knowing that, under the English law, half-brothers could not inherit real estate, and, for all practical purposes of descent, were not deemed the kindred of thé ancestor. This probably being the reason why half-brothers and sisters are unnecessarily mentioned in the second subdivision of the section, it affords no ground for treating the words, ‘brothers and sisters of the ancestor,’ in the fourth subdivision, as being limited to brothers and sisters of the whole blood. Indeed, in the third and fifth subdivisions of the section, the words, ‘brothers and sisters,’ are used to mean brothers and sisters of the whole and half-blood.”
In Brower et al. v. Hunt et al., 18 Ohio St., 311, it is held, under Section 2 of the act of 1857, relating to non-ancestral property, that property which had come from a deceased husband to his widow, descended upon her decease without issue and intestate, to her brothers and sisters, and not as ancestral property, as there contended, to the brothers and sisters of the deceased husband under Section 1 of that act. The supplemental act of 1877 (Section'4162, Revised Statutes), under consideration in Stembel et al. v. Martin et al., supra, was enacted to remove the apparent or supposed hardship and injustice resulting from the statute *234 as so interpreted. . The supplemental act provides that in such event one-half of the estate shall descend to the brothers and sisters of the intestate, or their legal representatives, and one-half to the brothers and sisters of such deceased husband or wife, or their personal representatives. The question then arose whether the words “brothers and sisters,” in the supplemental act, included those of the half blood. Williams, J., says: (519) “All real property, under our statutes of descent, is embraced within the two classes, ancestral, and non-ancestral, and the distribution of personal estates is according to the course prescribed for the descent of non-ancestral real property. Section 1, of the act of 1857, .expressly provides, that when brothers and sisters succeed, under its provisions, to ancestral property, they shall so take it, whether they ‘be of the whole or half blood of the intestate.’ And by the express provisions of Section 2, non-ancestral property passes first to brothers and sisters of the whole blood, and only when there are none of that class, to those of the half'blood. The supplemental act, has not, in express terms, provided in which of these two ways brothers and sisters shall take the property descending under its provisions.” The conclusion was that the supplemental act was to be construed as; if it read shall descend, “as provided in said second section,” that is to brothers and sisters of the whole blood, and their legal representatives,, and if none, then to those of the half blood. There is nothing in the decision, or in the opinion, in that case that in any manner affects the decision in Cliver v. Sanders, supra. In addition to the cases *235 cited, as holding that half-brothers of an ancestor are included in the word “brothers” wherever used without limitation, see the cases -cited by counsel for plaintiffs in error in Stembel et al. v. Martin et, al., 50 Ohio St., 495-496, and in 27 Am. & Eng. Ency. Law, 312, and in Woerner, The American Law of Administration, *145.
It is also said that if Charles Stockton never had been born, the estate would have descended to the brothers and sisters, or their legal representatives, of B. N. Stockton, of the whole blood in preference to those of the half blood. That is true, but in that event it would have been non-ancestral property and would have passed under Section 4159, Revised Statutes. It would have descended as the estate of B. N. Stockton. It did descend as his estate to Charles Stockton, who might have disposed of it, but he dying' seized of it, intestate, it now descends as his estate and not as that of his father. Freeman and wife v. Allen et al., 17 Ohio St., 527, was a contest between children of the first, second and third wife of the father, over the division of the lands that descended from the father to two of the children who died intestate, and it was held, “That, under the act regulating descents, so much of the estate as came to the intestate by descent, passed to his brothers and sisters of the blood of the ancestor from whom the estate came, whether they were of the whole- or half blood of the intestate; but the remaining part thereof, which came to him by purchase, passed to his brothers and sisters of the whole blood only.”
*236 The Ordinance of 1787 provided, subject to alteration by the legislature of the district, for the descent of property and that 'there should in no case be a distinction between kindred of the whole and half blood, and yet the first act passed in this state, the act of 1805, 1 Chase’s Statutes, 515, made the distinction, substantially in the form it now exists. Speculation as to the reasons for the distinction might be very interesting, but could not change the settled construction of the statute in the present case. Blackstone Book 2, chapter 14, while attempting to justify the distinction says: “It is certainly a very fine-spun and subtle nicety;- but considering the principles upon which our law is founded, it is not an injustice, nor always a hardship; since even the succession of the whole blood was originally a beneficial indulgence, rather than the strict right of collaterals; and though that indulgence is not extended to the demi-kindred, yet they are rarely abridged of any right which they could possibly have enjoyed before.” Of Blackstone’s effort, Sir Henry Maine in his Ancient Law, chapter 5, says: “In all the literature which enshrines the pretended philosophy of law, there is nothing more curious than the pages of elaborate sophistry in which Blackstone attempts to explain and justify the exclusion of the half-blood.” Maine suggests the following explanation, “In agnation too is to be sought the explanation of that extraordinary rule of English Law, only recently repealed, which prohibited brothers of the half blood from succeeding to one another’s lands. In the customs of Normandy, the rule applies to uterine brothers only, that is, to brothers by the same *237 mother but not by the same father; and, limited in this way, it is a strict deduction from the system of agnation, under which uterine brothers are no relations at all to one another. When it was transplanted to England, the .English judges, who had no clue to its principle, interpreted it as a general prohibition against the succession of the half blood, and extended it to consanguineous brothers, that is to sons of the same father by different wives.” In volume 4, Kent’s Commentaries, *406, • is an interesting note suggesting the source of the distinction between agnation and cognation. Pollock and Maitland in their History of English Law do not agree with Sir Henry Maine. They say, second volume, 303: “Our persuasion is that the absolute exclusion of the half blood, to which our law was in course of time committed, is neither a very ancient nor a very deep-seated phenomenon, that it tells us nothing of the original constitution of feuds nor of the agnatic family. In truth the problem that is put before us when there is talk of admitting the half blood is a difficult one and our solution of it is likely to be capricious. We can not say now-a-days that there is any obviously proper place for the half blood in a scheme of inheritance, especially in our ‘parentelic’ scheme. The lawyers of the thirteenth and fourteenth centuries had no ready solution, and we strongly suspect that the rule that was ultimately established had its origin in a few precedents. About such a matter it is desirable that there shall' be a clear rule; the import of the rule is of no great moment. Our rule was one eminently favourable to the king; it gave him escheats; we are not *238 sure that any profounder explanation of it would be true.”
The laws of descent among the New England settlers were not those of the mother country, and there is an interesting discussion of the matter by Mr. Andrews in his essay on “The Influence of Colonial Conditions as Illustrated in the Connecticut Intestacy Law,” in Selected Essays in Anglo-American Legal History, Volume 1, page 431.
It may be the reason our statute does not distinguish between the brothers and sisters of the whole and half blood of the ancestor is the one already suggested that, although in the case of ancestral property the blood is looked to yet, the property descends as the estate of the intestate and not as the estate of the ancestor. But whatever the reason, we conclude with the observation of Chancellor Kent, 4 Kent’s Commentaries, *406, “The laws of all countries, and our own in particular, are so different from each other on the subject, that they seem to have been the result of accident or caprice, rather than the . dictate of principle. There seems to be no very strong general principle (though, no doubt, the feelings of nature might interpose some powerful appeals in particular, cases) why the half blood should be admitted equally to the inheritance of the ancestor, which he acquired by purchase, and excluded from that which he acquired by descent, devise, or gift,-from some remoter ancestor, in whose blood they do not equally partake. If the ancestor was lawfully seized in fee, why should the course of descent be varied according to the source from which his title proceeded, or the manner of his procuring it? If *239 the rule of inheritance had required no' examination beyond the title of the intestate, and the proximity of the blood to him, there would have been more certainty and simplicity introduced into our law of descents.” The judgment is affirmed.

Judgment affirmed.

Crew, C. J., Spear, Davis, and Price, JJ., concur.