THE SYNDICATE COAL CO. *v.* DIXON ET AL.

*Service of summons—Immunity of witness or suitor—Extends to corporation of which witness officer or agent—Right to sue and service subject to implied immunity privilege— Immunity to persons within jurisdiction for other litigation, not arbitrary—Nonresident corporation president witness not privileged where foreign service available—Foreclosure of vendors' lien against corporation—Sections 11268 and 11282, General Code—Waiver or estoppel cannot be proven unless pleaded—Renewing purchase-money note not evidence of waiver of lien—Error proceedings—Motion for new trial prerequisite to reviewing weight of evidence.*

1. Immunity from process enjoyed by witness or suitor while attending court extends to corporation of which such witness or suitor may be an officer or agent for service.

2. Right to sue and get service as fixed by statute is subject to implied immunity running to those persons who are brought within jurisdiction by necessities of other litigation.

3. Rule that right to sue and get service is subject to implied immunity to persons brought within jurisdiction by other litigation, is not arbitrary, but rests on principle that one is not to be put in terror of becoming involved in litigaton in jurisdiction other than that of his residence by going into such jurisdiction to attend trial as suitor or witness.

4. In suit to foreclose vendors' lien against corporation, brought in county where land was situated, under Section 11268, General Code, summons for which, under Section 11282, would issue to county where corporation had its home, president of corporation did not acquire immunity from service in foreclosure suit when he entered county where land was situated as witness in another case, since such service could have been had at any time, and hence court properly overruled motion to quash service of process on president while in county.

5. In suit to foreclose vendors' lien for unpaid note given for balance of purchase price of land, renewal of purchase-

money note with change of rate of interest did not evidence purpose by vendors to waive their lien.

(Decided April 7, 1927.)

ERROR: Court of Appeals for Vinton county.

*Mr. O. E. Vollenweider,* and *Messrs. Hayes & Barns,* for plaintiff in error.
*Mr. F. Weinrich,* for defendants in error.

MAUCK, J.   David Dixon and Vesta Dixon were the owners of a tract of land in Vinton county, the mining rights to which were sold by them to the Syndicate Coal Company for $5,000.   They took as part payment certain shares of the corporate stock of the vendee, the balance of the purchase money being a promissory note for $2,500, dated January 7, 1921, due July 7, 1921, with interest at 6 per cent.   This note was renewed from time to time, the last renewal being on September 15, 1923, with interest at 8 per cent.

On September 10, 1924, the Dixons brought an action in the court of common pleas of Vinton county, seeking to foreclose a vendors' lien asserted by them for the unpaid $2,500 note, and secured service on the Syndicate Coal Company by causing the sheriff of Vinton county to serve summons on W. R. Hyatt, the president of that corporation, then in Vinton county.   A motion was filed to quash the service.   On the hearing of this motion it developed that the home office of the corporation and the residence of its president were both in Clinton county, and that Mr. Hyatt was, at the time he was so served, in Vinton county for his necessary appearance in the court of common pleas as a material

witness in an action then being tried, to which action the Syndicate Coal Company was a party. This motion was overruled, and on trial plaintiff recovered judgment. Two grounds only are urged for the reversal of this judgment.

The first ground is that the Syndicate Coal Company was immune from process had upon its president while the latter was in attendance as a witness in a suit then being heard in Vinton county, on the principle recognized in *Andrews* v. *Lembeck*, 46 Ohio St., 38, 18 N. E., 483, 15 Am. St. Rep., 547, and *Barber* v. *Knowles*, 77 Ohio St., 81, 82 N. E., 1065. We have no difficulty in holding that the immunity enjoyed by a witness or suitor extends as well to a corporation of which such witness or suitor may be an officer or agent for service. There is no question that in Ohio, as generally, the right to sue and get service as fixed by statute is subject to an implied immunity running to those who are brought within the jurisdiction by the necessities of other litigation. The rule, built up by the courts for their own protection and for the protection of those who seek justice from the courts, has been well described in the *Andrews case*:

"The question is one which profoundly concerns the free and unhampered administration of justice in the courts. That suitors should feel free and safe at all times to attend, within any jurisdiction outside of their own, upon judicial proceedings in which they are concerned, and which require their presence, without incurring the liability of being picked up and held to answer some other adverse judicial proceeding against them, is so far a rule of public policy, that it has received almost uni-

versal recognition wherever the common law is known and administered.''

In the *Barber case,* Judge Davis says that the privilege of immunity ''had its origin in justice to the suitor and in the necessity of protecting the courts from embarrassment in the transaction of business.''

The rule, therefore, is not an arbitrary one, but rests upon the principle that one is not to be put in terror of becoming involved in litigation in a jurisdiction other than that of his residence by going into such jurisdiction to attend a trial as suitor or witness. In any case where the witness or suitor might be deterred from going into the strange jurisdiction, the rule operates for his protection; where the county into which he contemplates going cannot acquire any jurisdiction by his presence in such county that it would not otherwise have, there is no reason for immunity and none can be had. This is illustrated by those cases which deny immunity to those witnesses, who, while in attendance on the court, become liable to process. Supported by the authorities there cited, it is thus put by the note in 19 A. L. R., 829:

''Another exception to the rule of immunity from service of process of a nonresident suitor or witness is process in an action for a tort committed by such suitor or witness while attending the foreign court.''

In such case the visiting witness is in the strange jurisdiction for reasons that would generally afford him protection from process. Inasmuch, however, as it was not such process as he might have feared before coming into the strange jurisdiction, it is not such service as he was immune from.

What, then, was the character of the service here complained of? The Dixons sought to enforce a vendors' lien against a corporation. The lands upon which the lien was asserted were situate in Vinton county. By virtue of Section 11268, General Code, foreclosure of this lien could have been had in Vinton county and in no other. Under Section 11282, General Code, summons would, of course, have issued to Clinton county, the home of both the corporation and its president. It follows, therefore, that Mr. Hyatt could not conceivably have needed any immunity from service when he went into Vinton county as a witness, from a suit in foreclosure in Vinton county, for service in such a case could have been had at any time. There was no reason why the Dixons should not have caused process to issue on the day it issued, and there was no reason why they should issue such summons to Clinton county while Mr. Hyatt was in Vinton county. The reason for invoking the rule of immunity not existing, the rule itself ceases to operate. *Householder* v. *Kansas Mutual Life Assn.*, 6 N. P., 520, 8 O. D. (N. P.), 321.

"The rule is by most courts held to apply equally well to suitors and witnesses attending court in the state but not in the county of their residence, where the process of such court could not reach them in the county of their residence." 32 Cyc., 493.

The second ground urged for reversal is that the Dixons had lost the vendors' lien which they originally had upon the property in question. The bill of exceptions is referred to as establishing this fact. There was no motion for a new trial filed, however, and consequently the bill of exceptions is

not available for a review of the weight of the testimony. *Turner* v. *Turner,* 17 Ohio St., 449. Moreover, no evidence would have been competent under the pleadings to have shown a waiver of the lien, or an estoppel to assert the same, for neither waiver nor estoppel was pleaded. The only question therefore is whether the petition itself alleges enough facts to support the finding that there was such a lien. The petition charges such a lien unequivocally. The only expressions in any way tending to reflect upon the vitality of the lien are those that allege that there was a renewal of the original note, and on the renewal note the rate of interest was changed from 6 to 8 per cent.

Some of the earlier Ohio cases indicate a purpose to hedge about the vendor's liens with narrow restrictions, and to avoid it when possible. After *Boos* v. *Ewing,* 17 Ohio St., 500, 49 Am. Dec., 478, followed by *Anketel* v. *Converse,* 17 Ohio St., 11, 91 Am. Dec., 115, this character of lien has been as liberally recognized and enforced in Ohio as in any state of the Union. In the *Boos case* the court expressly adopts the English view of such liens as defined by Eldon and others mentioned. The English view as laid down in Perry on Trusts (6th Ed.), Section 236, is this:

"The rule in England is that *prima facie* the vendor has a lien for the purchase money; the presumption in favor of this lien continues until it is displaced by satisfactory evidence that the lien has been abandoned or extinguished. The burden is on the vendee to repel the presumption."

"But this lien will be defeated if the vendor do any act manifesting an intention not to rely upon the land for security. What act is to be deemed

to work a waiver of a vendor's lien, it may not be easy to define   *   *   *.   It can only be waived by taking collateral security, or by an express agreement to that effect." 2 Washburn on Real Property (6th Ed.), Section 1035.

As Mr. Freeman says in his note to *Royal Consol. Mining Co.* v. *Royal Consol. Mines,* in 157 Cal., 737, 110 P., 123, 137 Am. St. Rep., 165, 194, when the lien has once attached the burden of disproving it rests on the objector, and if the proof of the abandonment is not decisively clear the lien stands.

We accordingly conclude that the renewal of the purchase-money note, with a change of the rate of interest, in no way evidenced a purpose on the part of the vendors to waive their lien.

There is no error in the record.

*Judgment affirmed.*

MIDDLETON, J., concurs.

SAYRE, P. J., not participating.