ASHER ET AL., APPELLANTS, *v.* ASHER, APPELLEE.

(No. 775—Decided May 12, 1948.)

Mr. *John A. Schlupp* and Mr. *Robert R. Stephenson,* for appellants.

Messrs. *Fisher, Smith & Renner,* for appellee.

McCLINTOCK, J.    This is an action for a declaratory judgment commenced in the Court of Common Pleas, in which the living descendants of one Henry C. Asher

were plaintiffs and Nettie Asher, widow of George W. Asher, deceased, was defendant. The court was requested to determine whether certain real estate owned by George W. Asher, who died intestate on March 26, 1930, passed as ancestral or nonancestral real estate. The case was tried in the court below upon certain stipulations and exhibits and comes into this court upon appeal on questions of law.

The record shows the following facts: Henry C. Asher died intestate January 26, 1901, survived by his wife, Amanda, and eight children. At the time of his death he owned about 1,500 acres of land in Tuscarawas and Guernsey counties, as well as certain lots in the village of Newcomerstown. No administration was had of his estate.

On January 13, 1902, Amanda Asher, the widow of Henry C. Asher, and his eight children and their spouses, if any, entered into a certain written agreement which, in substance, provided that the widow and children were desirous of executing a settlement, compromise, adjustment and partition of their several interests in the real estate, amicably among themselves. The agreement provided for three appraisers who were to appraise the real estate belonging to Henry C. Asher. Each tract was to be separately appraised, and Amanda Asher, in lieu of her dower, agreed to accept yearly, from each of the children, during her natural life the sum of $100 and agreed to quitclaim her dower interest in the real estate to be sold.

It was provided also that Araphael B. Asher was to take the land described as tract No. 1 at the value to be returned by the appraisers; that in as much as Araphael Asher had at his own expense and labor improved the land by erecting buildings and otherwise, he was to have the benefit of such improvements; and

that the land was to be appraised without considering such improvements which were to be appraised separately.

George W. Asher, under such agreement, agreed to take the tract known as tract No. 6, containing in all 273.5 acres, at the appraised value. Certain other heirs agreed to take certain tracts at the appraised value. In detail the children took tracts that were appraised as follows:

| | |
|---|---|
| George W. Asher | $ 5,740.00 |
| Stewart Asher | 7,950.00 |
| Emma Morris | 2,700.00 |
| John H. Asher | 6,000.00 |
| Amanda Asher | 2,700.00 |
| Araphael B. Asher | 6,441.00 |
| Elza P. Asher | 2,610.00 |
| Mary B. Hursey | 1,496.00 |
| Total | $35,637.00 |

Also, certain tracts were sold by the children and the widow of Henry C. Asher, deceased, to other parties, as follows:

| | |
|---|---|
| Newcomerstown Water Company | $1,000.00 |
| Lloyd Murphy | 3,200.00 |
| Guernsey County lands | 3,900.00 |

Deeds were thereafter executed to the various parties, signed by all the heirs and Amanda Asher, the widow of Henry Asher. Each deed recited as the consideration the appraised value and contained a clause that the grantee agreed to pay $100 per year to Amanda Asher during her lifetime.

Thereafter, George W. Asher sold 50 acres from the tract he purchased, leaving 223.5 acres, which is the real estate in question.

George W. Asher died intestate on March 26, 1930, leaving his widow, Nettie Asher, and no children, and

the rights of the parties to this action must be determined by the laws of descent and distribution in effect at the time of the death of George W. Asher, which were Sections 8573 and 8574, General Code.

It was agreed by counsel that one-eighth of the real estate owned by George W. Asher at the time of his death passed by descent and was ancestral property, and the court below so found it to be ancestral property. As to the seven-eighths of such real estate owned by George W. Asher at the time of his death, the court below held that it came to George W. Asher by purchase and was nonancestral property and that Nettie Asher, the widow of George W. Asher, took a life estate in one-eighth of such real estate and a fee simple title to the remaining seven-eighths.

The plaintiffs, appellants, allege four assignments of error committed by the court below:

First: That the trial court erred in its finding and judgment as to the total value of the lands of the ancestor.

Second: That the trial court erred in its finding and judgment that the value of George W. Asher's interest in the ancestral realty was limited to one-eighth of the value of such parcels as were actually taken by the children of Henry C. Asher.

Third: That the trial court erred in its finding and judgment that the collateral agreement as to dower interest operated so as to effect purchase rather than inheritance.

Fourth: That the judgment of the trial court is contrary to the law applicable to the undisputed evidence.

As to the first assignment of error, this court has examined in detail the facts in this case. It is claimed by plaintiffs that the proper value to be placed on the property of Araphael B. Asher is $9,141, instead of

$6,441, in as much as the actual appraisement, including the improvements, was $9,141. For the sake of argument, let us concede this to be true. Then the total value of the real estate taken by the children and heirs of Henry Asher would be $38,337 and one-eighth of that amount would be approximately $4,800, which would be less than the appraised value of the property taken by George W. Asher, which was $5,740.

It is also claimed by plaintiffs that the selling price of the land to third parties should be taken into consideration and added to this total. To this we cannot agree, as the real test is the value of the portions taken by the heirs under the agreement, and that if the value of the part taken by George W. Asher was greater than his one-eighth interest in the total, that the excess of his one-eighth interest in such tract would be real estate acquired by purchase and passed as nonancestral property. In support of this we cite the following authorities:

"Where tenants in common of land inherited by them, proceeded to make partition thereof under the 'act to provide for the partition of real estate,' and one of the parties elected to take the land under section 8 of the act, and, after obtaining a deed therefor pursuant to that section, died intestate: *Held*—

"1. That the title to so much of the land as came to the decedent by inheritance, remained a title in him by descent, notwithstanding the proceedings in partition; but the remaining title acquired by such proceedings was a title by purchase.

"2. That, under the 'act regulating descents,' so much of the estate as came to the intestate by descent, passed to his brothers and sisters of the blood of the ancestor from whom the estate came, whether they were of the whole or half-blood of the intestate; but

the remaining part thereof, which came to him by purchase, passed to his brothers and sisters of the whole blood only.'' *Freeman* v. *Allen,* 17 Ohio St., 527.

''1. The line of descent is not broken by partition of an estate theretofore held in common, whether the partition be made in a legal proceeding, or by the interchange of mutual releases. In either case the title of each parcener in the share set off to him in severalty remains the same as that by which his undivided interest in the land was held.

''2. Where the estate in common came by descent, devise, or deed of gift, the parcel allotted to a parcener who dies seized of the same descends according to the provisions of Section 4158, of the Revised Statutes.

''3. When partition is made by mutual releases, they should be read and construed together, in the light of the circumstances attending their execution; and it is competent to show that their only purpose was to accomplish the partition, and no other consideration passed between the parties, though a pecuniary consideration be expressed in the deeds.'' *Carter* v. *Day,* 59 Ohio St., 96, 51 N. E., 967.

''Where tenants in common of land devised to them make partition of same under the partition statutes of Ohio and one of the tenants in common becomes a purchaser of a portion of the common property and after obtaining a deed therefor died intestate; *Held:* That the title to so much of the land as came to the decedent by devise, remained a title in her by inheritance, notwithstanding the proceeding in partition; but the remaining title acquired by such proceeding was a title by purchase.'' *Lawson* v. *Townley,* 90 Ohio St., 67, 106 N. E., 780.

''Five coparceners entered into an amicable partition of land descended from a common ancestor. The land was surveyed and divided into tracts of equal

area but of unequal value. By arrangement of the heirs, each of them could bid for a farmhouse or homestead located upon one of the tracts, and the highest bidder was to have a quitclaim deed therefor from the other heirs. It was not agreed by nor was it within the contemplation of the heirs that this building was to be removed. After competitive bidding, one coparcener, C. H., bid $2,975 for the homestead, and received from the others a quitclaim deed therefor. This sum was equally distributed among the several coparceners. Mutual releases were executed for the other four tracts taken by the other heirs.

*Held:* To the extent of one-fifth of the tract selected by her, C. H. took title by descent, which upon her dying intestate passed under Section 8573, General Code. To the extent of the remaining title acquired by her under the amicable partition as aforesaid, she obtained the title thereto by purchase, which upon her intestacy passed under the provisions of Section 8574, General Code.'' *Huseman* v. *Fingermeyer,* 106 Ohio St., 113, 139 N. E., 862.

Counsel for plaintiffs dwelt at length on the case of *Lee* v. *Fike,* 28 Ohio App., 283, 162 N. E., 682. With that decision this court is in accord, but the facts in that particular case are entirely different from the facts in the case under consideration. In the *Fike case* there was an interchange of mutual releases in the form of quitclaim deeds by the heirs and the real estate so deeded was of equal value. In the instant case the real estate was of unequal value.

It is claimed also by plaintiffs that George W. Asher at the time of receiving his deed did not pay any money. This is true, but the price that he agreed to pay for his farm was greater than his one-eighth interest in the land taken by the heirs and in the final settlement, by reason of the sale of lands to third parties, his

share amounted to more than the price he agreed to pay for the farm.

In Ohio there is now no distinction between ancestral and nonancestral real and personal property. This law, Section 10503-1, General Code, 114 Ohio Laws, 320, became effective January 1, 1932, and the law in effect at the time of the death of George W. Asher was Sections 8573 and 8574, General Code. Section 8573 provided that "When a person dies intestate, having title or right to any real estate or inheritance in this state, which title came to such intestate by descent, it shall descend and pass in parcenary, in default of children or their legal representatives, to the relict of the intestate for life." Section 8574, General Code, provided that if the estate came by purchase, in default of children or their legal representatives, it vested in the relict of the intestate.

It is therefore the opinion of this court that one-eighth of the land owned by George W. Asher came to him by descent, and upon his death his widow, Nettie Asher, took a life estate and that seven-eighths of such real estate came to George W. Asher by purchase, and his widow, Nettie Asher, takes a fee simple title.

This was the same finding made by the court below and being of the opinion that none of the assignments of error claimed by plaintiffs is well taken, the judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

Putnam, P. J., and Montgomery, J., concur.